# CHARLESTON

WOODALL *et al* v. BRUEN *et al.*

Submitted March 30, 1915.   Decided April 13, 1915.

1. PERPETUITIES—*Executory Limitation.*

An executory limitation by deed or will, which need not necessarily vest within a life or lives in being and twenty-one years and ten months thereafter, violates the rule against perpetuities and is void, whether it might wholly and absolutely prevent alienation of the property beyond such period or not.  (p. 194).

2. SAME—*Option—Executory Limitation—Restraint on Alienation.*

An option for the purchase of land at such time in the future or within ninety-nine years from its date, as the optionee may elect, partakes of the nature of an executory limitation, vesting no immediate interest in the land, and constitutes an unreasonable restraint upon alienation thereof, even though such option is, in form, a reservation of right to the grantor in a deed by which the land is conveyed.  (p. 194).

3. VENDOR AND PURCHASER—*"Option to Purchase."*

An option of purchase is a mere personal right, not an interest in the optioned land.  (p. 194).

4. SAME—*"Option to Purchase"—Condition Subsequent.*

Such a reservation differs materially and essentially from a condition subsequent, capable of working a forfeiture to the grantor. (p. 196).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Kanawha County.

Suit by E. A. Woodall and others against Alexander J. Bruen and others.  From decree for defendants, plaintiffs appeal.

*Reversed and remanded.*

*Linn & Byrne,* for appellants.

*Brown, Jackson & Knight,* for appellees.

POFFENBARGER, JUDGE:

Deeming certain options to re-purchase the minerals in their lands, created by clauses in the deeds under which they hold, to be in contravention of the rule against perpetuities

and, therefore, void, the plaintiffs filed their bill to cancel them as constituting clouds on their titles, and the court dismissed it on a demurrer thereto.

Two deeds àre involved, both of which were executed by Alexander M. Bruen and wife, one bearing date Oct. 18, 1880, and the other Dec. 6, 1881. The former conveyed 66.12 acres of land to John Harvey Burdette and the other 210.36 acres to E. A. Woodall. Burdette conveyed his tract to Underwood who later conveyed it to Woodall. On June 25, 1908, Woodall leased both tracts to E. T. Crawford for oil and gas purposes. Prior to the execution of this lease, however, the heirs of Bruen, by a deed dated Jan'y. 31, 1907, had assigned, transferred and conveyed the options or reservations in the Burdette and Woodall deeds, to the United Fuel Gas Company, and that company claims the right, by virtue of the assigned options, to purchase the minerals in Woodall's lands at the price of $1.00 per acre.

The reservation or option in the Burdette deed reads as follows: "AND the said party of the second part, as a part of the consideration of this purchase, covenants and agrees to and with the said A. M. Bruen, that whenever at any time hereafter the said A. M. Bruen, his heirs or assigns, shall pay or tender to him, the said party of the second part, his heirs, or assigns, the sum of $———— Sixty six 12-100 dollars, in legal money, being One Dollar per acre of the land herein conveyed, the said party of the second part, his heirs, or assigns, shall and will convey to said A. M. Bruen, his heirs, or assigns, the right to dig, mine, remove and ship, on and from the premises, all the Limestone, Coal, Iron, or other minerals which may be in and upon said Lot No. 28, together with such rights of way, through, over, and upon said Lot No. 28 as may be necessary to the convenient digging, mining, removing and shipping of said Limestone, Coal, Iron and other minerals, reserving only so much thereof as may be used for domestic purposes." The one in the other deed differs from it only in respect to the land, the re-purchase price and the following limitation thereof: "The covenant respecting a reconveyance of these premises as before mentioned is to be null and void after ninety-nine years."

Except in one respect these option clauses admittedly fall

under the condemnation of the rule against perpetuities as defined in *Starcher Bros.* v. *Duty,* 61 W. Va. 373. Here the options were reserved to the grantor in the deeds. In *Starcher Bros.* v. *Duty,* the optionees were strangers to the title. The argument in support of the decree rests upon two submitted propositions, erroneous definition of the rule in the case just mentioned and differentiation upon the dissimilarity of relations of the optionees to the properties.

The submission of the first of these propositions is accompanied by an admission of the existence of two lines of authority on the question involved, one of which harmonizes with the position the court has taken. The rule itself as well as the divergent interpretations thereof rests upon considerations of public policy, undue restraint upon alienation of property being regarded as highly detrimental to the interests of society in general. According to one view, the general welfare in this respect is sufficiently protected by inhibition of suspension of the absolute power of alienation, or absolute suspension of such power, for an unreasonable period of time. Such suspension occurs when the situation of the property is such that nobody can sell or convey it, until after the lapse of that period. But for the rule, such conditions could be created. It is unnecessary here to illustrate the methods of creating them. In the opinion of other jurists, the rule goes further and condemns limitations that clog alienation and unduly restrain it for an unreasonable length of time, without absolute prevention thereof. So interpreted, it forbids practically all executory limitations, whether by will or deed, that do not vest within the time arbitrarily prescribed as being reasonable, a life or lives in being and twenty-one years and ten months; and, even though the holders of the respective rights have it in their power to combine them and put the property on the market, the restraint upon alienation is deemed to be incompatible with the welfare of society in general. Such was the situation in the Starcher and Duty case The rule is thus applied in England, Massachusetts, Maine, Pennsylvania, New Jersey, and Illinois, and the interpretation has the approval of Prof. Gray, author of a leading work on the subject. The books abound in learned arguments for and against the policy of this broader scope of the rule, as

well as the support or justification it has in principle and precedents. Perhaps in the greater number of American jurisdictions, the narrower interpretation prevails, but in some of them it has been adopted by statute.

It is said the construction to which this court has committed itself is inconsistent with the law respecting conditional grants, a subsequent condition violation of which forfeits the estate granted being valid, however long it may run from the date of the grant. But this argument overlooks very important distinctions. The right or possibility of reverter is regarded as a present vested interest in the land, not an executory interest to vest in the future. *Brattle Square Church* v. *Grant,* 3 Gray, 142; Jones, Real Prop. Conv., sec. 714. Moreover, nobody but the grantor or his heirs, or the successor of a corporate grantor, can enter for the condition broken. Neither a stranger nor an assignee can do so. Jones, Real Prop. Conv., secs. 723 to 728, citing numerous authorities. "And therefore, if an estate be made upon condition that upon such a contingent a stranger shall enter, or the estate shall cease, and another shall have it; however this may be so drawn as it may be a good condition to give him, his heirs, etc., that doth make the estate, an entry, yet it cannot be good to give the estate or an entry, to a stranger." Shep. Touch. 127. "The right of entry for condition broken is not assignable at common law." Jones, Real Prop. Conv., sec. 728; *Ruch* v. *Rock Island,* 97 U. S. 693. Hence the principle governing estates upon condition subsequent never confers title by way of executory limitation.

Nor is the situation of the Bruen heirs the same as if their ancestor had made a conditional grant. Bruen parted with all interest in the land, and reserved only a personal right, an option of re-purchase, which, if valid, would amount to an executory limitation, giving him, his heirs and assigns a future, not present, estate in the land upon a contingency, his or their election to buy at a stated price. No analogy between a re-purchase and an entry for condition broken is perceptible. In the former case, there is no condition, no possible forfeiture, and no possibility of a reverter or right of re-entry. The provision cannot be consistently interpreted as anything more or less than an option of purchase, running in one case

forever and in the other for 99 years. From these conclusions, it results that there is no ground upon which the case can be distinguished from that of *Starcher Bros.* v. *Duty.*

The 99 year limitation is too remote, for it might have extended beyond the lives of all living persons for whose benefit the option was reserved and twenty-one years and ten months. *Johnson's Estate,* 185 Pa. 179; *Shellcross' Estate,* 200 Pa. 122; *Chapman* v. *Cheney,* 191 Ill. 574; *Quinlan* v. *Wickman,* 233 Ill. 39; *Andrews* v. *Lincoln,* 95 Me. 541.

Having carefully re-examined the principles of the Starcher and Duty case and seeing no reason for departure therefrom, nor any ground upon which this cause can be distinguished from it, we will reverse the decree complained of, overrule the demurrer and remand the cause.

*Reversed and remanded.*