## Wytheville

### BLACKSTONE MANUFACTURING COMPANY V. ALLEN.

June 10, 1915.

Absent, Kelly, J.*

1. LOGS AND LOGGING—*Timber Contracts—Failure to Cut and Remove Within Time Limit—Title—Forfeiture—Conditions.*—Under a contract allowing a person to cut and remove standing timber within a time specified, the absolute title to the timber never passes out of the grantor until the grantee cuts and removes the timber within the time specified in the contract. There is no forfeiture of the timber remaining uncut or unremoved after the time limit, for there is nothing to forfeit, and there is no implied condition subsequent, because there is an express condition precedent to the passing of the title in the contract itself.

2. LOGS AND LOGGING—*Timber Contracts—Time Limit—Extension—How Obtained.*—Under a "timber contract" fixing a time limit within which the timber is to be cut and removed, but providing for an extension of the time upon payment of "the yearly interest on the purchase price," the term "yearly interest" means the interest for one year, and this must be paid or tendered and the extension asked before the expiration of the original period fixed by the contract, else all further rights under the contract are lost.

3. LOGS AND LOGGING — *Timber Contracts — Failure to Remove — Title—Lumber.*—Under a contract to cut and remove timber from the premises within a specified time, trees cut and removed to a saw-mill *on the premises*, whether sawed into lumber or not, remain the property of the seller, if not removed from the premises within the time specified in the contract.

4. LOGS AND LOGGING — *Timber Contracts — Extension — Waiver.*—While the vendor of standing timber may waive his rights both as to the amount and time of payment to be made by the vendee in order to secure an extension, no such waiver arises by his mere failure to demand the prepayment before the time

*Argued before Judge Kelly's term began.

limit fixed by the contract, as he has no right to make any such demand. The duty to pay or tender the requisite sum within the time prescribed rests with the vendee.

5. LOGS AND LOGGING—*Damages—Lumber Not Removed Within Time Limit.*—Where the purchaser of standing trees has sawed logs into lumber and removed it after the expiration of his right of removal, the measure of the seller's damages is the value of the lumber at the time of removal. If the contract requires the purchaser to cut and remove from the premises within a designated time, the seller has title to all timber, whether standing or cut, and whether manufactured or not, which was not removed from the premises within the time prescribed by the contract.

6. VERDICTS—*Excessive.*—The verdict in the case at bar is supported by the evidence, and the damages assessed cannot be said to be so excessive as to warrant the court in setting it aside.

Error to a judgment of the Circuit Court of Lunenburg county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given by the court:

1. The court instructs the jury that its duty is to determine all questions of fact, but that it is the exclusive duty of the court to construe the legal effect of instruments in writing; and that the court construes the deed offered in evidence in this case and made by and between the plaintiff and defendant, as follows:

(a) That said instrument is a conditional sale of such standing timber on the tract of land described in said instrument as is cut and removed before the expiration of seven years from the date of said instrument.

(b) That the foregoing section of this instruction is subject to the qualification as to whether or not the defendant obtained an extension beyond the period aforesaid in said instrument.

(c) The court instructs the jury that the plaintiff in this case may, if he so wishes, waive the payment of said yearly interest, both as to time and amount, but that said waiver must be established by the evidence in this case, and the only evidence submitted in this case with respect thereto upon which the court must pass consists of certain written letters which passed between the plaintiff and the defendant, and the court construes those letters as insufficient to establish a waiver either of the time of the payment of said yearly interest or of the amount thereof.

2. The court instructs the jury that if they believe from the evidence that there was any standing timber remaining on the tract of land in question at the expiration of the seven years period mentioned, and that the extension period had not been acquired, such standing timber was on the 3rd day of February, 1913, and thereafter, the property of the plaintiff.

3. The court instructs the jury that it construes the said instrument with respect to the extension to be in the nature of a condition precedent, and that it was the duty of the defendant in order to avail itself of the said extension period, or any part thereof, to have tendered to the plaintiff the yearly interest provided for in said instrument, on or before the 2nd day of February, 1913.

4. The court instructs the jury that such timber as was cut down and either lying in place or hauled to the mill on the same premises but remained in the form of logs, prior to February 3, 1913, was and remained the property of the plaintiff.

5. The court instructs the jury that under its construction of the deed in question it construes, and so determines, that the defendant acquired title to only such timber as was cut and removed from the premises prior to February 3, 1913; that the conditions "cut and removed" are imperative, and that manufacturing or sawing the said tim-

ber into lumber before February 3, 1913, will not comply with, and cannot be substituted for, the condition of removal found in said deed, if the jury believe from the evidence that said sawed lumber remained upon the premises until after February 3, 1913.

6. The court instructs the jury that as to such timber as was cut after February 3, 1913, it is immaterial whether it was hauled to the mill, whether it was sawed into lumber, or whether it was removed from the premises; for in either event the court instructs the jury that said timber was and remained the property of the plaintiff.

7. The court instructs the jury that it was the duty of the defendant to have cut and removed the timber from the premises described in the deed here in question, before acquiring absolute title thereto; and if the jury believe from the evidence in this case that the defendant cut down, sawed or manufactured timber into lumber, which lumber was sawed or manufactured, although cut prior to February 3, 1913, and remained on the premises on February 3, 1913, then in that event the defendant acquired no absolute title to such lumber, but that the same was the property of the plaintiff.

8. The court instructs the jury that if they find from the evidence in this case that any timber was standing on the said premises on or after February 3, 1913, as hereinbefore instructed, the said standing timber was and remained the property of the plaintiff, and that the cutting, hauling, manufacturing or sawing of such timber will not affect the ownership of said timber, and will not put title thereto into the defendant.

10. The court instructs the jury that there is a count in the declaration of the plaintiff alleging damage to the realty caused by the cutting and hauling of the timber uncut on February 3, 1913, that the only evidence in the record concerning the amount of this damage is that it was

$25 or $30, and this evidence is undisputed; and if the jury believe from the evidence that this statement is true they shall find for the plaintiff on this count.

11. The court instructs the jury that if they believe from the evidence that there was any manufactured lumber lying upon the premises in question on February 3, 1913, and if any timber was sawed or manufactured thereafter, the jury are reminded of instructions Nos. 2, 4, 5, 6, 7 and 8 to the effect that the said lumber was and remained the property of the plaintiff; and if the jury find from the evidence that the sawed lumber was taken and carried away by the defendant, its agents, or employees, they, the jury, are instructed that the measure of damages in the event of such taking and carrying away shall be the value at the time of the said taking and carrying away.

12. The court instructs the jury that in no event are they to find damages for the plaintiff in a sum exceeding five thousand dollars.

*W. Moncure Gravatt* and *Buford, Lewis & Peterson,* for the plaintiff in error.

*McNeill, Hudgins & Ozlin,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action grows out of a contract for the sale of standing timber, and the declaration filed by the plaintiff, L. E. Allen, against the defendant, Blackstone Manufacturing Company, contains five counts. Upon the issue joined on the plea of the defendant of not guilty there was a trial, resulting in a judgment of the court on the verdict of a jury in favor of the plaintiff awarding damages in the sum of $1,500. To that judgment this writ of error was allowed the defendant.

We do not deem it necessary to undertake to discuss *seriatim* the eighteen assignments of error contained in the petition for this writ of error.

The case is as follows: On February 2, 1906, defendant in error (plaintiff below) and his wife, executed to plaintiff in error (defendant below) a deed conveying to the latter, in consideration of $3,001 (the $1.00 apparently having been paid as earnest money) "all of the standing timber" on a certain tract of land owned by the grantors, containing 150 acres, situated in Lunenburg county, which deed contains the following clause: "The said Blackstone Manufacturing Company shall have the period of seven years from date of this deed within which to cut and remove said standing timber, and after the expiration of the said years, they shall have an additional period of three years, or so much thereof as they may desire, for cutting and removing said timber: provided they pay to the said parties of the first part  *  *  *  the yearly interest on the purchase price of the above described timber."

The allotted period of seven years mentioned in the deed for cutting and removing the timber expired on February 2, 1913, and during that period plaintiff in error commenced, but did not complete, the cutting, manufacture and removal, and according to the facts appearing in this case, which are practically undisputed, at the expiration of the seven year period some of the timber was still standing, some had been cut down and was lying where felled, some had been cut down and hauled to a mill on the same premises, but not removed therefrom: some had been cut down, hauled to the same mill, there manufactured into boards, plank, posts, etc., but not removed; and all the timber standing at the expiration of the seven year period or cut as above set forth was removed after February 3, 1913, i. e:, plaintiff in error, putting its own construction upon the extension clause of said deed, and without notice or

consultation with defendant in error, proceeded to complete
the severance of the remaining standing timber and to man-
ufacture it, as well as the logs which had been hauled to
its saw mill, before February 3, 1913, into merchantable
form, and all of this lumber when so manufactured was
hauled to a lumber yard or planing mill at the railway sta-
tion at Kenbridge and there piled together and indiscrim-
inately mixed and intermingled with other lumber of like
kind and nature, which latter lumber came from other
sources and belonged to plaintiff in error; and that lum-
ber, from this commingled mass, was sold from time to
time by plaintiff in error and shipped f. o. b. from Ken-
bridge for its own account and benefit.

After the severance and manufacture of all the timber
had been completed, but before all of the manufactured
products had been removed from the saw mill premises
situated on defendant in error's land, he, on March 19,
1913, addressed a letter to plaintiff in error calling its at-
tention to the fact that the seven year period provided in
the said deed or contract for the cutting and removal of
the timber in question had expired on February 2, 1913,
and requesting that plaintiff in error send check for $180,
which was, according to the writer's version of the con-
tract, six *per cent.* interest for one year on the purchase
price of the timber, and further expressing, in effect, the
view that plaintiff in error could claim no additional time
within which to cut or remove the timber or the manufac-
tured products thereof from defendant in error's land until
the amount of this one year's interest on the purchase price
of the timber which he demanded had been paid.

To this letter plaintiff in error replied on March 25,
1913, saying that its vice-president and general manager
would be in defendant in error's neighborhood in a few
days "and bring you check for what we are due you on
the extension of the contract we hold with you for stand-

ing timber." The promise made in that letter was not complied with, but instead, on April 25, 1913, plaintiff in error wrote defendant in error as follows: "The deed you made us provides that after the seven years period we could have three years additional, 'or as much thereof as we may desire,' by paying 6% yearly interest on purchase price. We don't think that we will need over six months from February 3, 1913, and therefore hand you our check for $90.00 to cover that period, for cutting and removing the timber bought under your deed of February 2, 1906 * * * "

On the receipt of this letter and check defendant in error, by letter of April 30, 1913, returned the check and wrote plaintiff in error to the effect that he would not accept less than $180.00 which ought to have been paid before February 2, 1913, in order to keep the deed and contract from becoming null and void. Nothing further was done towards adjusting the matter between the parties, and this suit followed at the second rules of the court, held in its clerk's office the third Monday in July, 1913.

There are, as it appears to us, but two questions in the case as to the law applicable thereto, and with these questions determined adversely to the contentions of plaintiff in error it will, of course, be necessary to consider and determine whether or not the case, upon the facts, which the evidence tended to prove, has by the trial court's rulings in giving and refusing instructions asked by the respective parties, been fairly submitted to the jury, and if so, whether there is evidence sufficient to sustain their verdict.

The questions of law adverted to, briefly stated, are as follows: (1) Whether or not plaintiff in error, under the "extension clause" in the contract, had the right to proceed to cut, manufacture and remove after February 2, 1913, the timber and lumber in question, and "to haul the manufactured product to * * * Kenbridge * * *

for sale and shipment without first obtaining from the defendant in error an extension of the seven year period for the cutting and removing of the timber, as provided for in the contract between the parties; and (2) if plaintiff in error had no such right, has defendant in error, by his conduct or acquiescence, waived his right to regard the timber and the manufactured products thereof remaining on his land after February 2, 1913, as his own, and is he thereby estopped to claim the timber, or damages by reason of its being cut, removed and appropriated by plaintiff in error to its own use.

The decisions of this court construing "timber contracts" such as is under consideration in this case, which are in perfect accord with a large majority of the decisions of the courts in other jurisdictions construing similar deeds or contracts, are to the effect that absolute title to the timber never passes out of the grantor until the grantee cuts and removes the timber within the period of time allowed by the contract for so doing; that there is no "forfeiture" of the timber remaining uncut or unremoved after the time limit because there is nothing to forfeit; that there is no "implied condition subsequent" because there is an express condition precedent (to the passing of absolute title) in the contract itself.

The latest expression of this court construing a similar contract is in the case of *Hartley* v. *Neaves,* decided January 27, 1915, *ante,* p. 218, 84 S. E. 97, where the contract fixed the period within which the timber granted was to be cut and removed at five years, with this additional clause added: "It is also agreed that additional time not to exceed five years will be granted to the parties of the second part for removal of said timber upon the payment of fifteen dollars a year for the said additional time."

In the present case the contract differs from the contract in the case cited only in the length of the period fixed for

the cutting and removal of the timber, and in the wording of the "extension clause." The period fixed in the present case is seven years, while in the other it was five, and here, instead of using the words "that additional time not to exceed five years will be granted　＊　＊　＊　upon the payment of fifteen dollars a year for said additional time," the contract reads, "and after the expiration of the said years (seven), they (grantee) shall have an additional period of three years, or so much as they may desire, for cutting and removing said timber; provided they pay to the said parties of the first part　＊　＊　＊　the yearly interest on the purchase price of the above described timber."

The purchase price of the timber in the case cited was $250, and lawful interest on that amount for one year is $15, while in the present case the purchase price of the timber was $3,000, upon which the lawful yearly interest would be $180; hence, it appears that in both instances the same method of calculation of the amount to be paid for an extension of the period fixed for the cutting and removal of the timber granted was adopted. "The yearly interest on the purchase price" clearly means the interest for one year on the purchase price, and there is nothing in that language to distinguish the import and meaning thereof from that of "upon the payment of fifteen dollars a year for said additional time," used in the contract construed in the case cited, where it was held that a timber deed, which provided that the grantee should have five years in which to cut and remove the timber, and that additional time, not to exceed five years, should be granted for removal upon payment of $15.00 a year for the additional time, bound the grantee to make payment and request extension before the expiration of the first five year period, and not having done so his rights under the deed were lost. See, also, note to said case reported in 1 Va. Reg. (N. S.) 32.

·The case of *Bateman* v. *Kramer L. Co.*, 154 N. C. 248, 70 S. E. 474, cited in *Hartley* v. *Neaves, supra,* is also reported in 34 L. R. A. (N. S.) 615, to which is appended an editorial note in which the authorities are collected, which note says: "No hard and fast rule can be laid down for the construc-. tion and effect of a provision in a timber contract which extends the time for the removal of the timber. The question in each case is, what is the contract between the parties?  *  *  *  But to claim the privilege, a notification to that effect is required to be given the owner of the property before the expiration of the period originally al- lotted, with a tender of the stipulated amount."

In *Hartley* v. *Neaves, supra,* it was said that this rule of construction of timber deeds or contracts imposes no unreasonable burden or hardship upon the grantee or vendee in such deeds or contracts, and upon the facts in the instant case there is no conceivable reason why a dif- ferent rule should be applied. · Here plaintiff in error, rely- ing upon its own construction of the extension clause of the deed with respect to its rights thereunder, and without notification to defendant in error before the expiration of the period originally allotted for the cutting and removal of the timber, and hence without the tender of the stipu- lated amount for any extension of that period, proceeded to cut, manufacture and remove the timber and lumber from the lands of defendant in error, and to haul the manu- factured products to a railroad station for sale and ship- ment as though the period originally allotted for the cut- ting and removal of the timber had not expired.

The trial court rightly gave instructions Nos. 2, 3, 4, 5, 6, 7, 8, 9 and 10, asked by defendant in error, which fol- lowed the rule of construction applicable to the contract in question, established by the line of cases to which those above mentioned belong, and did not err in refusing other instructions asked by plaintiff in error, which sought to

have the exactly opposite view of the law propounded to the jury.

Nor did the court err in instructing the jury to the effect that the plaintiff in the case might have, if he so wished, waived the payment of the yearly interest stipulated for in the contract, both as to time and amount, but that such waiver had to be established by the evidence in the case, and that the only evidence submitted with respect to such waiver, upon which the court should pass, consisted of certain letters between plaintiff and defendant (referred to above in this opinion) and that those letters were insufficient to establish a waiver either of the time of the payment of the yearly interest stipulated for in the contract, or of the amount thereof.

The contention of plaintiff in error that defendant in error construed the deed to mean that the yearly interest was not due in advance of the extension period, based solely upon his not having demanded the interest in advance, that he never demanded the proper amount at any time, and did not demand even an improper amount until "seven days after the completion of the severance and manufacturing of the timber," is wholly unsupported by anything appearing in the record. As we have seen the law imposes upon the grantee or vendee in such a contract the duty to apply for the extension of the time agreed on for the cutting and removal of the timber, if he desires it, and to pay or tender the amount stipulated as the consideration for the granting of such extension, before the extension can begin. The grantor or vendor in such a contract has no right to demand the stipulated consideration for an extension of the period originally allotted for the cutting and removal of the timber until the original period has ended, for the all-sufficient reason that the grantee or vendee is under no absolute obligation to pay it at all, though he has the right to pay it but cannot be com-

pelled to do so; and, therefore, the failure of defendant in error here to make demand for the prepayment of the yearly interest in question could not prejudice his rights in any way, much less show that he construed the contract to mean that his grantee, plaintiff in error, had the right to the extension without the prepayment of a year's interest on the purchase price of the timber stipulated for in the contract.

There is no evidence in the record that the belated removal of the timber was caused by any act, inducement or acquiescence whatsoever on the part of defendant in error, and the most that can be made of his correspondence with plaintiff in error introduced in evidence by the latter, or of any other proof in the case, is a willingness on his part, even though the contract had expired, to waive his right and grant an extension of one year of the period originally allotted for the removal of the timber, as expressed in his letter of March 19, 1913, but instead of accepting and acting on this proffered waiver, plaintiff in error, under its own interpretation of the deed, went on with the cutting and removal of the timber as though its right to do so had not expired on February 2, 1913, and made no offer to pay any part of the consideration for an extension of the period originally allotted in the contract, until about five days before the removal of the timber was completed and then only tendered to defendant in error a check for one-half of the amount required by the terms of the contract to entitle it to any extension of the original period of time which had expired more than two months before.

The next assignment of error requiring consideration relates to the court's rulings in granting and refusing instructions with reference to the measure of damages. Having rightly taken the view and so instructed the jury, that all of the timber not removed from the land of defendant in error on or before February 2, 1913, whether it

consisted of standing timber or logs hauled to the mills on the premises, or the manufactured products thereof into merchantable forms, remained the property of the plaintiff, the court, with reference to the measure of damages in the case, further instructed the jury to the effect, that if they believed from the evidence that there was any manufactured lumber lying upon the premises in question on February 3, 1913; that any timber was sawed or manufactured thereafter, and that such sawed lumber was taken and carried away by the defendant, then the measure of damages that they might allow the plaintiff would be the value of the lumber at the time of such taking and carrying away; but in no event were they to find for the plaintiff in a sum exceeding five thousand dollars (the amount of damages claimed in his declaration).

We are of opinion that there was no error in so instructing the jury. It was shown in evidence that at the date of the expiration of the contract between the parties the timber or lumber here in suit existed actually, in different classes or forms. Some of it, as has been stated, was standing, etc., and accordingly proof was offered to establish the stumpage value of the standing timber, the market value of logs cut down and in place, the same for logs hauled to the mills, and for the same when manufactured into merchantable forms, as well as to the value of these latter forms after the removal from the premises. The testimony given by experts as to the value of the stumpage fixed it at from $3.00 to $4.00 per thousand feet (pine timber), while the other testimony in the case showed that as much as 385,351 feet of the manufactured products of the timber were removed from the premises after February 3, 1913. There was undisputed damage to the realty, and when the evidence as to the value of the timber, etc., removed from the premises after February 3, 1913, is weighed and considered, either with reference to the stump-

age value of the timber or its value when manufactured into merchantable forms, it cannot be reasonably claimed that the jury in its assessment of the plaintiff's damages at $1,500 was misdirected or misled by the court's instructions with respect to the measure of damages in the case.

The verdict of the jury is not, as we have seen, contrary to law, and enough of the evidence in the case has been adverted to to show that it is sufficient to support their finding, approved by the court, upon the questions of fact submitted to them, and that the damages assessed in favor of defendant in error are not excessive—certainly not so grossly excessive as to warrant the court in setting aside the verdict. Having taken this view of the case, we deem it unnecessary to discuss other of the assignments of error relied on in the petition for this writ of error, or to consider the cross-errors assigned in the brief for defendant in error.

Upon the whole case we are of opinion that the judgment of the circuit court is right, and, therefore, it is affirmed.

*Affirmed.*