# CHARLESTON.

MINNIE CUNNINGHAM *et al. v.* CORA A. HELTZEL *et al.*

Submitted October 26, 1920.   Decided November 23, 1920.

1. LOGS AND LOGGING—*Deed Granting Right to Cut and Remove Timber Held to Vest An Irrevocable Right.*

   A deed granting right to cut and remove all of the timber on a tract of land, except one species thereof, within ten years from its date, upon a substantial pecuniary consideration, vests in the grantee and his assigns an irrevocable right to do the acts contemplated by it.   (p. 393).

2. SAME—*Rights Under Timber Deed Not Abandoned by Cessation of Operations.*

   A right so conferred, unlimited and unrestrained by any-thing in the deed, except a right reserved by the owners of the land, to clear and use portions of it after removal of the timber therefrom, is not lost nor terminated by cessation of timber operations on the land for a period of more than four years, commencing several years before expiration of the ten year period, and after only about half of the timber had been cut, removal of the log-slide and railroad side-track, constructed for use in the operations, and sale of part of the mill machinery and mill building, under circumstances clearly disclosing intent on the part of the grantee, not to abandon such right, and repelling the theory of completion of the authorized work, such as payment of taxes on the timber by him, his maintenance of an agent in charge of his property on the land, including the timber, and persistent efforts to realize the benefit of the contract by discovery of means of profitable operation and sale of the remaining timber.   (p. 393).

   (WILLIAMS, PRESIDENT, absent).

Appeal from Circuit Court, Randolph County.

Suit by Minnie Cunningham and others against Cora A.

Heltzel and others. Decree for defendants, and plaintiffs appeal.

. *Affirmed.* .

*Don Cunningham* and *A. M. Cunningham,* for appellants.
*W. B. & E. L. Maxwell,* for appellees.

POFFENBARGER, JUDGE:

This appeal has brought up for review a decree partially dissolving an injunction inhibiting the cutting and removal of the timber on certain lands, which was awarded to the owners of the lands, upon the theory of an abandonment or forfeiture of the timber rights vested in the assignors of the defendants, by a deed dated, July 17, 1912, and extending over a period of ten years from said date.

Having commenced the cutting of the timber in the winter following the date of the deed, the grantees, W. De Frehn & Sons, took part of it from portions thereof, and, in the fall of 1915, discontinued their lumber operations, removed their timber slide and some of the machinery from their mill, permitted the railroad company to take up the siding they had caused to be put in for the purposes of their timber operations, and later sold the building in which some of the mill machinery was stored. By a contract dated, Oct. 7, 1919, they assigned such rights as they had under the deed, to John W. Heltzel and Cora A. Heltzel, and sold them their mill machinery, equipment and saw-mill building, all for and in consideration of $600.00 and the assumption of liability for unpaid taxes thereon, the amount of which, so far as ascertained, was $49.85. Part of the land, about 25 acres, has not been cut over at all and a considerable amount of merchantable timber was left on the portions on which cutting was done. The deed granted "all of the timber of every kind, character and description either standing, lying or being, except the locust." It saved to the grantors the right to clear, cultivate and use all land on which there was no timber and portions of the timbered land, after removal of the timber therefrom. After the cutting above mentioned, they cleared, fenced and used certain parts of the cut over land, and the assignees found them in possession thereof.

The injunction awarded inhibited the cutting of any of the

remaining timber. The final decree perpetuated it as to the land cleared, fenced and sown to grass, and dissolved it as to the other portions thereof. It also settled a controversy raised by the pleadings, over the saw-mill building. De Frehn & Sons had verbally sold it to D. S. Cunningham, at the price of $125.00; but, as he had not paid for it, they included it in the sale to the Heltzels. The court found and held that the contract or deed of assignment to the Heltzels carried the title to the purchase money of the mill building, and adjudicated by its decree their right to cause it to be sold to satisfy their demand for such purchase money, if not paid. As to this part of the decree, there is no specific assignment of error.

The right claimed by the defendants was vested in their assignors by a formal deed which clearly created at least an irrevocable license to cut and take away the timber. In so far as a grant is appropriate and necessary to the accomplishment of the expressed purposes of the parties, the instrument contains it. If a deed is requisite, it answers this requirement. Besides, it is founded upon a substantial money consideration, $8,000.00, of which $3,000.00 was paid in cash. It is immaterial whether the instrument of assignment is a deed or not. De Frehn & Sons had clear right and the Heltzels claim under them. The instrument is at least a contract between them under which the latter may act by virtue of the title of the former. *Lewis* v. *Yates,* 62 W. Va. 575, 583; *Core* v. *Faupel,* 24 W. Va. 238; *Clark* v. *McClure,* 10 Gratt. 305; *Pickens* v. *Stout,* 67 W. Va. 422, 435. However, the court below no doubt correctly held it to be in legal effect a deed. *Wilson* v. *Buffalo Collieries Co.,* 79 W. Va. 279.

The vital question in the case and the only one extensively argued is whether De Frehn & Sons abandoned the right conferred by the deed or can be deemed to have taken off all of the timber they intended to cut. As they had ten years in which to cut and remove it and were wholly unrestrained in any way, during that period, except by the right reserved by the grantors to clear and make use of the lands as they should be cut over, their cessation of operations long before the expiration of that period is altogether consistent with their explanation that they had decided to await a more favorable market and to alter their

method of operation, on account of the expense imposed by the character of their equipment.    Instead of using the log-slide and conveying the timber to their stationary mill, they say they contemplated the location of a portable mill nearer the timber, or the employment of such a mill.    If so, they could consistently sell or remove the machinery in their stationary mill, take up their log-side and sell the mill building to Cunningham.    They had clear and perfect right also to sell the privilege and property vested in them by the deed and could continue to hold them for that purpose. It is admitted in argument, agreeably to well settled law, that the question of abandonment is one of intention, usually determinable by the acts and conduct of the party interested.    That being true, he can wholly cease operations and remove all equipment from the premises, without loss of his right, if it appears from other acts and conduct or an express verbal notice or assertion of intention, that he means to hold it.    No law precludes the dead-renting of property.    A tenant need not remain in actual occupancy of leased property in order to keep his landlord out of it.    If he has paid his rent or continues to pay it, he may do as he pleases about remaining on the property, in the absence of a stipulation to the contrary.    In view of these obvious propositions, the acts relied upon as proof of abandonment are not at all conclusive nor very significant, when considered in the light of other facts disclosed by the record. De Frehn & Sons had cut only about one-half of the timber and they left an agent in charge of their property, including the timber which was taxed to them, after as well as before the cessation of operations, for some time, at a valuation of $2,500.00 and later at $500.00.    Kisamore's agency is denied by the plaintiffs, but it is clearly proved by the testimony of De Frehn and himself, as well as by continuous correspondence between them.    A letter from De Frehn & Sons to Kisamore, dated, December 9, 1916, makes an inquiry about the timber and the possibility of getting it cut and hauled out.    Another dated, December 19, 1916, directs the agent to make an investigation and see what can be done with it.    One dated, September 12, 1917, refers to the timber.    Such is the character of one dated, September 22, 1917, the timber being its

principal subject.     One dated, November 26, 1917, relates
to it, and payment of the agent for his services.     The plain-
tiffs seem to have given cause as early as February 6, 1918, for
belief that they would resist further cutting of the timber, as
a letter of that date from the principals to their agent indi-
cates, and, in that letter, the agent is urged to find a purchaser
for it, and also in one dated, August 6, 1918.     De Frehn &
Sons received from the plaintiffs themselves a letter dated,
December 13, 1917, offering three car loads of lumber for a re-
lease of the timber right.     Objection is made to reliance upon
this letter, on the ground that it was written by the husband
and his agency for his wife, the owner of the land, is not proved;
but the whole record discloses his agency.     He carried on the
negotiations respecting the timber and farms the improved
part of the land.     His agency need not be proved by direct
and formal testimony.     He interposed objections on behalf of
his wife, respecting the timber, and she has taken the benefit
thereof in this litigation.     Her acceptance of part of his con-
duct in the premises amounts in law to an acceptance of the
residue of it.     Being her agent in acts beneficial to her and
accepted by her, he is equally her agent in acts constituting
parts of the same transaction and detrimental to her.     D. S.
Cunningham testified that Chas. H. De Frehn had told him, on
one occasion, that his firm had abandoned the timber or were
done with West Virginia.     De Frehn denies this statement
and the witness himself admits De Frehn did not say he made
no further claim to the timber and also that he said he wanted
to sell such right as the firm had.     Manifestly, De Frehn
meant no more than that operations had been abandoned, if he
made the statement at all, but that did not necessarily work a
relinquishment of the timber right or title vested by the deed.
Inadequacy of the price paid by the Heltzels is also relied upon
as proof that De Frehn & Sons deemed their title to have been
lost by abandonment, at the date of the assignment.     That is a
mere circumstance to be considered along with all of the
other evidence.     It affords ground for only an inconclusive
inference which cannot stand against the positive proof of direct
assertions of right, throughout the whole period of cessation,
to which reference has been made.     We are unable to concur in

the view of counsel for the appellants, that the facts in this case are as probative of intent to abandon, as were those in *Kunst* v. *Mabie,* 72 W. Va. 202. The terms of the conveyances are very materially different and the conduct of the licensees in that case was obviously more indicative of intention to abandon than that of De Frehn & Sons. It would be useless to consume time and space here in specification of the differences in circumstances. A comparison of the opinions will clearly disclose them.

A departure in the decree from the written opinion filed by the trial court constitutes no ground for reversal. Presumptively, the court read and understood the decree and knew what the record contained. As the timber right has not been lost, the rights of way granted in connection with it and necessary to its enjoyment are still held by the defendants and the decree properly so adjudicates.

These principles and conclusions result in affirmance of the decree complained of.

*Affirmed.*