THE SUN LUMBER COMPANY

*v.*

THE THOMPSON LAND & COAL COMPANY

(No. 10493)

Submitted January 27, 1953. Decided March 17, 1953.

LOVINS and RILEY, JUDGES, *dissenting*.

*John H. Fox, Herbert M. Blair,* for appellant.

*B. C. Eakle, Osman E. Swartz,* for appellee.

BROWNING, JUDGE:

The Sun Lumber Company instituted this suit in equity in the Circuit Court of Clay County praying to be relieved of a claimed forfeiture of a certain agreement, dated July 14, 1944, and for an injunction restraining defendant from interfering in any way with plaintiff's rights under that agreement. The defendant, The Thompson Land & Coal Company, demurred to the bill on the grounds that: (1) Plaintiff had an adequate remedy at law; and (2) the bill did not state sufficient grounds for relief, it appearing from the bill that any injury sustained by plaintiff is due to its own negligence.

The bill of complaint, as amended, sets forth that the defendant entered into an agreement with one G. G. Gillespie, dated July 14, 1944, by which it "sold and doth grant and convey" all timber of certain size located upon

defendant's lands in Union District, Clay County, the instrument containing this language:

"Second party is to have five years from the date hereof in which to cut and remove said timber from said lands, with the right to extend such time, from year to year, not exceeding an additional five years, upon payment to first party of the sum. of $75.00 per year for each annual extension."

There was also a provision that, at the expiration of the agreement, all timber, whether cut over or not, and all buildings and improvements would revert to and become the property of the first party, its successors or assigns.

Subsequently, Gillespie entered into an agreement with plaintiff, dated October 31, 1944, identical with the original instrument, except as to dates and parties, and containing the same words "five years from the date hereof * * *."

The bill then alleges that the plaintiff, not having considered it practical to remove the timber during the original five year period, forwarded a check in the amount of $75.00 to defendant in July, 1948, for the purpose of extending its rights to cover the year July, 1949 to July, 1950, which check was accepted and used by the defendant. The plaintiff, again having found it impractical to remove the timber during that year, decided to avail itself of an additional extension, but due to an oversight on the part of its personnel, perhaps a result of the misleading date, October 31, 1944, on the second agreement, their check in the amount of $75.00, covering the extension, was not issued until September 14, 1950. This check was returned by defendant with the notation:

"It is our position that all rights under the G. G. Gillespie timber contract terminated July 14, 1950. * * * Should you cut or remove any of the timber you will be liable as a trespasser."

The court sustained defendant's demurrer, the plaintiff filed an amended petition to which defendant demurred on the original grounds, and the court again sustained the demurrer. The plaintiff declined to further amend, an order was entered dismissing the bill, from which order this Court granted an appeal and supersedeas on June 2, 1952.

In considering this case, it is of primary importance to determine the nature of the instrument that was executed between the parties. It is referred to in the bill of complaint as an agreement, and in briefs of counsel as a contract, lease and deed of conveyance. The decisions of this Court and those of other jurisdictions have rather clearly established that such an instrument is a conveyance of the timber growing upon the land of the size designated, and that it vests a defeasible fee in the grantee. 18 M. J., Trees and Timber, § 14, in giving the West Virginia rule quotes from *Adkins* v. *Huff*, 58 W. Va. 645, 52 S. E. 773, as follows: "The authorities are practically uniform in holding that an instrument granting standing timber, and containing a clause requiring or permitting it to be removed within a specified time from the date of the grant, gives no absolute and unconditional title to the property. Some courts hold the right of the grantee to be a license, others a lease, and others a defeasible title to the timber. By the great weight of authority it is determined that no right or title exists in the grantee after the expiration of the time specified in the deed or contract."

We find this statement in *Keystone Company* v. *Brooks*, 65 W. Va. 512, 514, 64 S. E. 614: "In case of a conveyance of timber, with a time limit requiring its removal from the land in a given time, the weight of authority is, that the conveyance is conditional, the purchaser taking only what timber shall be removed within that time, the balance reverting to the owner of the land, or rather remaining his." There was, as heretofore stated, a definite and unqualified reversion clause in the instrument in controversy in this suit.

Although it might be argued that there is a lack of complete harmony in the West Virginia cases dealing with this subject, a careful scrutiny of the cases indicates that the disharmony, if any exists, relates to those cases in which there is a conveyance of the standing timber or a reservation thereof by the owner in conveying the surface with no time limit for the removal of the timber. In *Carder* v. *Matthey, et al.,* 127 W. Va. 1, 32 S. E. 2d. 640, a case involving a reservation of the timber with no specified time for removal, the Court held that twenty years was not an unreasonable time within which the grantee could remove timber from the land, but Judge Fox in the majority opinion stated: "We do not question the rule laid down in *Hill* v. *Vencill* and subsequent cases cited above; but even so, the question of whether a person should lose his right under the rule announced therein depends on the facts of the case. No fixed period of time is or can be laid down for all cases. In the case at bar approximately twenty years passed from the date of the deed in question and the institution of this suit. If we had before us a simple exception of the timber, without specification of time for removal, and nothing more, it might be said that, under the rule announced in the cases above considered, the defendants had lost title thereto; * * *."

In contrast is the agreement between the parties in *Lange & Crist Box & Lumber Co., Inc.* v. *Haught, et al.,* 132 W. Va. 530, 52 S. E. 2d. 695, which provided that the purchaser would "log and remove all timber covered and conveyed by this deed on or before the 18th day of November, 1946.", the deed having been executed on July 11, 1945. There were 246 acres of timber involved in that transaction. This Court held in a unanimous decision, the opinion being written by Judge Haymond, that: "Under a written agreement between the landowners and a purchaser which, for a cash consideration, conveys standing timber but requires its removal from the land on or before a specified day and expressly provides that at that time the agreement shall become null

and void, the title to the timber, acquired by the purchaser or a grantee of the purchaser, is defeasible by failure so to remove it, and after the final day prescribed for its removal such grantee has no right or title to the timber, including that previously severed but not removed from the land."

The facts in the Virginia case of *Hartley, et al.* v. *Neaves, et al.*, 84 S. E. 97, very closely parallel those in this case. The parties there agreed that the grantees should have five years in which to cut and remove the timber, and that if it was not removed within the initial period, the grantees should have an additional time, not to exceed five years, for the removal upon payment of $15.00 a year for the additional time. No timber was cut within the first five year period, nor was any offer made to pay the sum designated for the extension time, until more than ninety days had elapsed after the expiration of the first five year period. The Virginia court, upon that state of facts, held: " * * * the grantees were bound to make payment and request extension before the expiration of the first five-year period, and, not having done so, their rights under the deed were lost."

It will be observed that in the instant case, the grantee had exercised its privilege of renewing beyond the initial five year period, and had made a payment of $75.00 which covered the first additional annual period beyond the initial five year period, that is from July 14, 1949 to July 14, 1950. The Court is unable to distinguish a case in which there is a failure upon the part of a grantee to extend the time within which timber could be removed by making such payment as is required prior to the expiration of the initial period, and the case under consideration wherein the failure to comply with the terms of the agreement occurred subsequent to the end of the initial period. The language of this instrument is clearly and unambiguously to the effect that the extension beyond the first five year period was to be upon an annual basis, and that the grantee could secure each of

those annual extensions only by the payment to the grantor of the sum of $75.00. That this fact was clearly understood by the grantee is evident from its action in forwarding to the grantor a check in the sum of $75.00, much in advance of July 14, 1949, the date of the expiration of the first five year period, and it is interesting to note that a voucher attached to the check recited that the $75.00 payment was for an extension of its rights from July 14, 1949 to July 14, 1950. It has been argued ably and well by counsel for appellant that it was only by misadventure and confusion, resulting from the October 31 date upon the second agreement, that their client neglected to make the $75.00 payment for a second annual extension on or before July 14, and that it should not be penalized under those circumstances.

The instrument between these parties creates a defeasible fee in the timber with an option to extend the period for the removal of the timber by compliance with the terms of the agreement. The fact that the grantee did not exercise its option for the second annual period beyond the original five year period was not, according to this record, in any way contributed to by the appellee.

The title of the appellant to the trees standing on this tract of land, as of July 15, 1950, depends upon the secondary question of whether payment for the annual extension was to be made in advance. If the defeasible fee of the appellant was defeated by its failure to exercise its option to extend by the terms of the agreement on the 14th of July, then it could not revive it by payment of this sum on the 31st day of October. Title to real property does not so easily flow from one party to another. It is well argued, and strongly urged, that the agreement between these parties did not provide that the sum to be paid for each annual extension was to be in advance. The appellant, according to this contention, could make the $75.00 payment at any time between July 14, 1950 and July 14, 1951, and thereby protect its rights to the extension for that year. However, as heretofore

stated, it is quite clear that the appellant understood, by the notation attached to the voucher on its check for the first extension, that the payment was to be in advance, and that the rights given it by the payment of the first $75.00 extended only to July 14, 1950.

If the contention of the appellant is tenable to the effect that it had a full year, from July 14, 1950, within which to exercise its option to secure an extension for that year, then the appellee is placed in the position of not knowing until July 14, 1951 whether the appellant had elected to exercise its option for that year. If the appellant had neither tendered payment nor given notice of his intention to renew until the expiration of that year, the appellant would not be responsible for the payment for that year, and, upon demand by the appellee, could disclaim any such responsibility by simply stating that it had no desire to renew the option after July 14, 1950. If such a position could be maintained, it would amount to the granting to the appellant of an additional year without cost, during which time it could remain silent to the detriment of the appellee who would not be in a position to cut the timber or otherwise dispose of it, and at the same time be at the mercy of the appellant as to whether it would be paid the amount agreed upon for the annual extension. We do not believe that it was the intention of the parties to create such a situation at the time this instrument was executed.

As was stated in *Hartley, et al.* v. *Neaves, et al., supra,*: "* * * If appellants could wait over 90 days before giving such notice and paying or tendering the money to be paid by them for an extension of time for the removal of the timber, they could have as well waited till the end of the year following the expiration of the five-year limit of the time and thus left appellees in suspense as to their right to dispose of their timber, and as to the use they could make of their land upon which the timber is standing. No duty was imposed upon appellees in their contract with appellants with respect to an

extension of the time for the removal of this timber other than to grant an extension not to exceed five years upon proper demand being made of them for the extension and the payment or tender of the stipulated amount therefor."

We believe that under the decisions of this Court, and by the great weight of authority elsewhere, that a conveyance which creates a defeasible fee in a grantee of standing timber, with an option for renewing the time for removal, is to be strictly construed in favor of the grantor. *Hartley, et al.* v. *Neaves, et al., supra; Hall* v. *W. M. Ritter Lumber Company*, (Va.), 187 S. E. 503; *Tuxbury Lumber Company* v. *Byrd*, (S. C.), 127 S. E. 267; and *Williams* v. *Roper Lumber Company*, (N. C.), 93 S. E. 741.

The appellant also advances the theory that a denial of its title to the timber involved amounts to a declaration of forfeiture, and we are well aware of the elementary principle of equity jurisprudence that equity looks with disfavor upon forfeitures, and that equity never enforces a penalty or forfeiture if such can be avoided. In *Carder* v. *Matthey, et al., supra*, it was stated that: "* * * not only will a court of equity refuse to act affirmatively in the enforcement of a forfeiture, but will often relieve against it." The Court, in the same case, quoted *Engel* v. *South Penn Oil Co.*, 106 W. Va. 339, pts. 2 and 3 syl., 146 S. E. 385, and said further: "A condition subsequent defeating the title upon non-performance must be clearly expressed or arise by necessary implication from the language used in the deed."; "After an estate has been vested by apt and proper deed the courts will always construe the deed so as to prevent a forfeiture or defeasance of the estate conveyed thereby, if possible." *Craig* v. *Hukill*, 37 W. Va. 520, 16 S. E. 363, and several other West Virginia cases to the same effect are quoted in that opinion supporting the well established principles with which this Court has no quarrel.

It will be observed that assuming that a forfeiture

was involved in this case that the grantor is not attempting to enforce it in a court of equity, it having been the defendant in the lower court. Furthermore, the condition subsequent, if such there was, was clearly expressed in the agreement between the parties and does not arise by implication, assuming again that forfeiture is involved. However, it is the position of this Court that forfeiture is not involved. The word "forfeiture" has been somewhat loosely invoked by the courts to describe various terminations of rights where the nature of the termination was unessential to a decision upon the issue involved. In its broad meaning, a forfeiture is the loss of a vested interest in consequence of a breach of duty. *McCutcheon, et al.* v. *Enon Oil & Gas Co.*, 102 W. Va. 345, 135 S. E. 238; *Sands, Exr.* v. *Holbert,* 93 W. Va. 574, 117 S. E. 896.

As heretofore stated, it is the opinion of this Court that the instrument involved in this case conveyed to the grantee a defeasible fee with an option for an extension of the time within which to remove the timber conveyed to it. In order to avail himself of the right, the optionee must comply with the conditions set out in the option contract. 1 Warvelle on Vendors and Purchasers (2d Ed.) § 175; Williston on Contracts, Vol. 6 (Rev. Ed.) § 1970.

This Court has held that an option is a mere personal right, not an interest, and that, as such, it differs materially and essentially from a condition subsequent capable of working a forfeiture. *Woodall, et al.* v. *Bruen, et al.,* 76 W. Va. 193, 85 S. E. 170.

In *Lake Shore Country Club* v. *Brand, et al.,* 339 Ill. 504, 171 N. E. 494, it was stated: "* * * An option contract does not come within the equitable rule against forfeitures. The question of declaring a forfeiture is not involved. An option contract gives to the optionee a right under the named conditions. If those conditions are not met, the optionee does not acquire the right. Such a situation involves none of the elements of a

forfeiture. It deprives no party of any right and abrogates no contract, but, on the other hand, is but the enforcement of the contract made by the parties. * * *"

In *Blackstone Mfg. Co.* v. *Allen,* (Va.), 85 S. E. 568, the court in construing a timber contract, similar to the one in question here, said: "* * * there is no forfeiture of the timber remaining uncut or unremoved after the time limit, because there is nothing to forfeit; * * *."

The Virginia court in *Wilson Bros., et al.* v. *Branham, et al.,* 131 Va. 364, 109 S. E. 189, referred to the doctrine laid down in the *Blackstone* case as to forfeiture, but intimated that it would apply only where there was an express and limited right to enter and remove the timber, not an unlimited right. In this case, the right of. entry, and the time therefor, was definitely limited and expressly set out in the agreement between the parties, and, upon the appellant's failure to exercise its option to extend such period at the proper time, all of its rights under the agreement were terminated.

The decree of the Circuit Court of Clay County is affirmed.

*Affirmed.*

LOVINS, JUDGE, dissenting:

I do not concur in the affirmance of the decree of the trial court for the following reasons:

I think that the action of the court in this suit gives force and effect to an inequitable principle whereby the plaintiff loses valuable property rights.

The opinion of the courts in other jurisdictions are varied and divergent. Some courts hold that writings, similar to that here considered, grant a mere license to remove the timber from the land for a reasonable time. Other jurisdictions take the position that such rights constitute a lease on the land for the purpose of the timber operations. Others hold that the deed is a conveyance of the timber, and vests in the grantee an absolute

estate. Others, including this court, adopt the principle that writings similar to the one here considered grant a defeasible fee in the timber, and where no time is specified for removal of the timber, the grantee's title is forfeited by an implied condition to remove it within a reasonable time. *Williams* v. *McCarty,* 82 W. Va. 158, 165, 95 S. E. 638. It is to be noted however, that *Keystone Co.* v. *Brooks,* 65 W. Va. 512, 64 S. E. 614, held that the instrument there considered, vested in the purchaser an absolute estate in the timber. In the *Keystone* case, no time limit for the removal of the timber and no forfeiture for failure to do so was provided.

Later cases however, leave no doubt as to the character of the estate granted by deeds or agreements selling timber with a provision that they must be removed within a certain time. See *Null* v. *Elliott,* 52 W. Va. 229, 43 S. E. 173; *Adkins* v. *Huff,* 58 W. Va. 645, 52 S. E. 773; *Hill* v. *Vencill,* 90 W. Va. 136, 111 S. E. 478; *Carder* v. *Matthey,* 127 W. Va. 1, 32 S. E. 2d 640; *Lumber Co.* v. *Haught,* 132 W. Va. 530, 52 S. E. 2d 695; *Williams* v. *McCarty, supra.*

The right granted by writings of this kind gives to the grantee and the assignees an irrevocable right to perform the actions provided by the agreement. *Cunningham* v. *Heltzel,* 87 W. Va. 391, 105 S. E. 155. It is not meant to say however, that the holding in the *Cunningham* case renders the time limit or any extension thereof ineffective. It follows that the Lumber Company in this case had an irrevocable right to remove the timber on the defendant's land within 5 years or within any annual extension, made under the provision of the agreement or deed.

For the original sale of the timber, the assignor of the Lumber Company paid $3000.00 and no timber having been removed from the land, they made a timely payment of $75.00 for one annual extension. The timber was not removed within the original time of 5 years or within the annual time of one year extension.

The controlling point in this case is: Was the Lumber Company required to pay the $75.00 for the annual extension in advance or could such sum be paid within a reasonable time after the commencement of the second annual extension. The first extension of time within which to remove the timber commenced on the 14th day of July, 1949, and ended on the 13th day of July, 1950. The plaintiff did not make a tender of $75.00 for the second annual extension until on or about the 14th day of September, 1950, when a check in the sum of $75.00 for the second annual extension was forwarded to the Thompson Land Company. This check was returned to the Sun Lumber Company on or about September 18, 1950, for the stated reason that the rights of the Sun Lumber Company to remove the timber had terminated July 14, 1950. The Sun Lumber Company, thereafter, on December 4, 1950, made a second tender of a check of $75.00 which was refused by the defendant land company for the same reason. It is alleged in the bill of complaint that the failure to pay this check on the 14th day of July, 1950, was the result of an inadvertence or oversight on the part of the plaintiff's personnel having such payment in charge. Plaintiff further alleged that the delay of the removal of the timber from the land was for the reason that it was deemed unprofitable to cut, remove and market the timber, and that merchantable timber is now growing on the defendant's tract of land of the approximate value of $5000.00.

By its demurrer the defendant admits the truth of the facts well pleaded, and it is to be noted that this suit was decided by the trial court on the issues of law presented by a demurrer to an amended bill of complaint. Plaintiff having declined to further amend its bill, the suit was dismissed.

It is said in the court's opinion that the action of the trial court and this court does not present a case of forfeiture for the reason that the plaintiff had nothing to forfeit. A recital of the foregoing indicates that the

plaintiff lost property rights of value by the actions of the trial court and this court. Dealing with reality rather than technical distinctions, I think that it comes within the rule that equity will not stand by and see a person deprived of a valuable property right without intervening and protecting such rights. "It is not reasonable to suppose that so important a privilege as that of the right to remove the timber which had been fully paid for should depend upon so trifling a circumstance as the prompt payment of $5 per annum. There is nothing in the nature of the transaction to suggest that consequences so serious were intended to be imposed by such failure, or that a forfeiture of all rights was to follow." *Ciapusci* v. *Clark*, 12 (Cal. App.) 44, 106 Pac. 436. Applying the foregoing quotation, I do not think that the failure for approximately two and one-half months to pay the small sum of $75.00 should cause such serious result to the plaintiff as has occurred in the instant case.

It is true that there are cases in other jurisdictions which hold that under varying contracts and factual situations, that the money or consideration to be paid for extensions of time in timber contracts, must be paid in advance and before the expiration of the original or extended times. See *Hartley* v. *Neaves*, (Va.) 84 S. E. 97; *Hall* v. *W. M. Ritter Lumber Co.* (Va.) 187 S. E. 503; *Williams* v. *John L. Roper Lumber Co.* (N. C.) 93 S. E. 741; *A. C. Tuxbury Lumber Co.* v. *Byrd*, (S. C.) 127 S. E. 267.

As to general rules applicable to extension of time, see Annotation 15 A.L.R., 85; 31 A.L.R., 949; 42 A.L.R., 645; 71 A.L.R., 151.

As to the specific question whether the money or consideration for an extension must be paid in advance, see Annotation 164, A.L.R., 446.

On the contrary, there are some well considered cases which are contrary to the doctrine just discussed and which hold that payment within a reasonable time will

meet the requirement. Bearing in mind that no time is specified in the agreement under which plaintiff claims, I think the following is pertinent and appropriate: "The right to remove the timber expired June 1, 1912; and, in the absence of a provision in the agreement for a specific time within which the option to extend should be exercised and the money paid, it is sufficient if it be exercised within a reasonable time after the right to remove expires." *Gotham* v. *Wachsmuth Lumber Co.* (Wisc.) 146 N. W. 505, 506. The following is also pertinent: "The parties did not make time of the essence of their contract, doubtless for the reason that the amount stipulated for a year's extension was so small as to be considered unimportant. Under the terms of this lease, we are of opinion that payment within a reasonable time was all that was required." *Bond* v. *Brown*, 5 (C.C.A.) 2 F. 2d 797, 799. See 17 R.C.L. 1090; *Stacy* v. *Reams*, (Ky.) 299 S. W. 193; *Watson* v. *Stout Lumber Co.*, (Ark.) 298 S. W. 1010. In the *Watson* case, there was a definite provision requiring the payment of money in advance for the extension. The money was paid within five days after the expiration of the original three year period during which the timber could be removed. In that case it was held that such payment was substantial compliance.

Prior to the decision in this case, this court has not decided whether the money or consideration should be paid in advance or whether payment may be made within a reasonable time after the expiration of the original period or an extension thereof. Having in mind the circumstance of mistake or inadvertence occasioning the delay in this case, I think the delay should have been excused since the plaintiff offered to pay within a reasonable time, thus substantially complying with its agreement.

I think that upon consideration of the record in this suit, we are confronted with a conflict of the principle laid down in *Craig* v. *Hukill*, 37 W. Va. 520, 16 S. E. 363;

*McCutcheon* v. *Oil & Gas Co.*, 102 W. Va. 345, 353, 135 S. E. 238. It is now held in this opinion, at least by implication, that the rights of the plaintiff were defeated upon the nonperformance by it of a condition subsequent. "A condition subsequent defeating the title upon non-performance must be clearly expressed or arise by necessary implication from the language used in the deed." *Engel* v. *Oil Company*, 106 W. Va. 339, 146 S. E. 385. Further, "The law favors the vesting of estates, and is adverse to their destruction after they have been vested; and hence, the firmly established rule is that courts will always construe a stipulation in a deed so as to prevent either the nonvesting or defeasance of an estate conveyed thereby, if possible." *Sands* v. *Holbert*, 93 W. Va. 574, 117 S. E. 896.

No time is specified in the agreement between defendant and Gillespie as to when the payment should be made for the annual extensions. It seems to me that this court has in effect added a requirement that such payments must be made in advance, though Gillespie and the defendant, in their original agreement, did not so provide. Courts should not, except in instances of extreme necessity, make or alter contracts betwen private persons concerning private property rights.

In this case, the effect of this court's decision amounts to a privation of the plaintiff of valuable property rights for which $3075.00 has heretofore been paid and which are now valued at $5000.00. Upon the ground that the plaintiff, through mistake or inadvertence, failed for approximately two and one-half months to pay the small sum of $75.00, when by their agreement, the plaintiff and the defendant did not make time the essence of their agreement. The mere statement of this discloses the inequity and lack of justification for a decree having that effect.

For the foregoing reasons, I would reverse the decree of the trial court.

I am authorized to say that Judge Riley concurs in this dissent.