# CHARLESTON.

Nelson V. McMullin *et al. v.* Susan J. Pritt *et al.*

(No. 5838)

Submitted April 20, 1927.        Decided May 3, 1927.

Cases Applied.

    Point 2, Syl., *Trader* v. *Jarvis*, 23 W. Va. 100, and Point 2, Syl., *Carter* v. *Price*, 85 W. Va. 744, both bearing on the subject of laches, applied.

Appeal from Circuit Court, Kanawha County.

Suit by Nelson V. McMullin and others against Susan J. Pritt and others. Decree affirmed.

*Affirmed.*

*Payne, Minor & Bouchelle,* for appellants.
*J. N. Kenna* and *B. J. Pettigrew,* for appellees.

Hatcher, President:

This suit involves the title to the mineral of three tracts of land in Kanawha county, containing 15, 16 and 11 acres, respectively.

In 1861, Wm. A. McMullin and George M. Morrison conveyed to Edmond P. Young as Trustee for his wife Rachel

Young, a tract of 74¼ acres, situate on Mill Creek in Kanawha county. All coal and other minerals were reserved, except that the grantees were given the privilege of using coal for household purposes. Young as Trustee and in his own right, and Rachel Young conveyed the tract to John C. Matheney, on November 9, 1882, by the same description as that in the deed to Young, Trustee, but without reservation of the coal and other minerals. Matheney and wife conveyed 15 acres of the tract to James M. Toler by deed dated October 18, 1884. Toler conveyed the 15 acres to C. W. Buckner by deed dated May 5, 1890. Buckner failed to pay the taxes on the tract for the year 1916, it was sold by the sheriff and purchased by M. M. Robertson to whom a deed was made by the clerk on March 2, 1920. On March 3, 1920, Robertson and wife conveyed the land to Otto Buckner, a son of C. W. Buckner. In 1921, C. W. Buckner died and by deed of March 19, 1923, Otto Buckner and wife conveyed the 15 acres to his mother, defendant Susan Buckner.

On November 15, 1890, John C. Matheney and wife conveyed to S. A. Buckner 16 acres of the 74¼-acre tract, and on January 30, 1892, S. A. Buckner conveyed the same to defendant Susan Pritt.

On March 29, 1892, John C. Matheney and wife conveyed to Susan Pritt a tract of 11 acres, which was also a part of the 74¼-acre tract.

The plaintiffs are the vendees, heirs and devisees, respectively, of Wm. A. McMullin and George M. Morrison. They allege possession of the mineral through a lease of the oil, and seek in this suit to cancel as clouds on their title the deed to John C. Matheney for the 74¼-acre tract and all the above mentioned subsequent deeds so far as they purport to convey the mineral.

The decree complained of is:

> "By consent of all parties the testimony taken in the case of Nelson V. McMullin et al., against M. F. Matheny et al., M. F. Matheny against the Newlon Oil & Gas Co. et al., and S. A. Buckner against M. F. Matheny, were read and considered upon the hearing of the above-styled cause. And now said

cause coming on this day to be heard upon the bill
and exhibits, upon the separate answer and gen-
eral replication thereto, plea and demurrer of
Susan J. Pritt and Susan Buckner to the said bill
of complaint; upon the depositions of M. V.
McMullin, J. D. Moore, C. P. Peyton, M. F.
Matheny, J. M. Pritt, Harriett Young, J. M.
Copenhaver, George Buckner, C. W. Hanna and
S. A. Buckner and others, all which are here
ordered filed, the cause was argued by counsel.
Upon the consideration of all whereof the Court is
of the opinion and doth find that defendant, Susan
J. Pritt, has developed, mined and sold from the
property mentioned, set out and described in said
pleadings coal for a period of time more than
twenty years prior to the institution of this suit
and has leased for oil and gas said property for the
period of time aforesaid, and that she has acquired
title to the minerals underlying said property by
virtue of adverse possession.

And the Court is further of the opinion and
doth find that the plaintiffs are guilty of laches
and that they are not entitled to the relief prayed
for in their said bill in this cause and doth ac-
cordingly judge, order and decree that the plain-
tiffs' bill in said cause be dismissed * * *.''

## *Susan J. Pritt*

The record in this case does not contain the records in the
cases referred to in the decree; neither does it contain the
depositions of F. M. Matheny, Harriet Young, J. M. Copen-
haver, George Buckner, J. M. Pritt, C. W. Hanna and S. A.
Buckner, to which specific reference is made in the decree.
The brief of appellants states that it was agreed by counsel
that ''the depositions in certain other suits mentioned in the
final decree were not relevant to the issues in this suit and
need not be printed as a part of the record herein.'' That
agreement is also not in the record. Assuming that it is in
writing (as required by the rules of this court) and properly
dispensed with the printing of those cases in this record, no
reason appears why the depositions of F. M. Matheny and
others named in, and ordered filed by the decree, should be

omitted. In the absence of some of the depositions upon which the circuit court based its finding of facts in regard to the Susan J. Pritt title, we cannot say that the finding is wrong.

## *Susan Buckner*

The reason given in the bill for the delay in bringing this suit is that "all or nearly all of your orators are non-residents of the State of West Virginia, and that none of your orators were aware, until a short time before the institution of this suit, that the defendants or any of them were claiming title to said minerals."

The only one of plaintiffs to testify is Nelson V. McMullin, and he does not support that allegation. He stated that plaintiff James H. McMullin has resided in Kanawha county for more than fifty years, and that in 1912 James H., in connection with plaintiff Mary J. Flynn and John H. McMullin, deceased (who was the father of the deponent), executed to Seymour Edwards a lease for oil upon a boundary of 369 acres, which included the Buckner tract, under which lease a dry well was drilled. The deponent admits that he was informed of plaintiff's claim by his father in 1916, and that he learned of defendants' adverse claims in 1916 or 1917. This action was not instituted until December, 1924. No testimony repels the inference that James H. knew or should have known of the defendants' adverse claims in 1912, or explains his delay in controverting them. No explanation is given by Nelson V. of why he waited eight years after learning of the adverse claims before demanding the redress he seeks in this suit. "Delay in the assertion of a right, unless satisfactorily explained, even when it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver." *Trader* v. *Jarvis,* 23 W. Va. 100 (108).

The plaintiffs make no claim of the payment of any taxes on this mineral by them since 1861. Their brief asserts that the land has been charged in fee to, and the taxes thereon paid by, Susan Buckner and her grantees back to 1861. They contend that such payment enures to their own benefit.

James H. knew he was paying no taxes on this mineral as early as 1912. Nelson V. admits being informed by his attorney in 1917 that the adverse claimants were paying the taxes on the land in fee, but that he made no effort to have the plaintiffs charged with the mineral until 1922. In the meantime, in 1921, a producing oil well was drilled on the Buckner tract. ''Nothing can call into activity this Court but conscience, good faith and reasonable diligence. Where these are wanting the Court is passive and does nothing.'' *Trader* v. *Jarvis, supra.*

The conduct of Nelson V. in waiting from 1917 to 1922, and until after the mineral had become valuable, before seeking to pay the taxes, as well as the indifference of James H., is entirely lacking in that good faith which equity demands.

It is not necessary to decide in this case whether the privilege of using coal for household purposes granted in the deed to Young, Trustee, was a personal or real covenant. If personal, it ended with the conveyance in 1882 to Matheny. If real, it passed with land to Matheny, but it was *only one right*. Its enjoyment was limited to one family. It is not such a privilege as is practicable to apportion to the several grantees of Matheny, under the rule announced in *Dickenson* v. *Hoomes*, 8 Gratt. 353, and 15 C. J. 1259 (Sec. 80). It could not pass to every grantee of a small portion of the 74¼-acre tract. Otherwise, what was originally designed as one right could be indefinitely multiplied, and instead of one family using coal as many families would have that privilege as there were subdivisions of the 74¼ acres. See Washburn, Easements, 4th Ed. sec. 12c. *Pierce* v. *Keator,* 70 N. Y. 419, 26 Am. R. 612; *Wilder* v. *Wheeler,* 60 N. H. 351.

C. W. Buckner purchased only 15 acres of the original tract. He therefore acquired no right (by virtue of the conveyance to Young, Trustee to use the coal for household purposes. The answer of Susan Buckner alleges adverse possession of the mineral of her tract for more than ten years. During the eight years intervening between the time Nelson V. learned of the defendants' claims and the institution of this suit, C. W. Buckner died. He had held the title to this

tract for more than twenty-five years. He would undoubtedly have been a valuable witness for Susan Buckner on the duration and extent of the mining. A comprehensive statement of laches is given by this court in *Carter* v. *Price,* 85 W. Va. 744, as follows:

> "Laches in legal significance is delay in the assertion of a claim which works disadvantage to another, and where it appears that by reason of such delay the adverse party would be injuriously affected because of the death of witnesses by whom the truth of the situation could be proven, or because injury might result to him on account of expenditures made upon the land in the way of improvements, or where no claim is asserted until after the land has grown in value, either because of the development of the territory or the discovery of valuable minerals thereon, and such delay in asserting such claim is so long as to lead to the belief that it is asserted largely because of the increased value of the land and the altered conditions, a court of equity will decline to give relief."

Adopting in part the language of the above decision, we hold that by reason of plaintiffs' delay, Susan Buckner is injuriously affected because of the death of C. W. Buckner, by whom the truth of the situation as to her adverse possession could have been proven; that plaintiffs did not assert a claim to the mineral until after it had grown in value because of the discovery of oil; and that the long delay in bringing this action warrants the belief that the claim is now asserted entirely because of the increased value of the mineral and the altered conditions.

The evidence supports the finding of laches by the circuit court. Its decree is therefore affirmed.

*Affirmed.*