# CHARLESTON.

Israel G. Engel *et al. v.* South Penn Oil Company

(No. 6259)

Submitted October 30, 1928.   Decided November 13, 1928.

*Haymond & Fox,* for appellees.

*Charles Powell, Kemble White* and *A. F. McCue,* for appellant.

LIVELY, PRESIDENT:

On October 9, 1900, plaintiff, Israel Engel, then about 64 years of age, deeded to defendant, South Penn Oil Company, an undivided one-half of all the oil and gas in and under 338½ acres of land owned by him in fee, in Braxton county, and in the deed also leased the other undivided one-half of the oil and gas to defendant for a term of twenty years, beginning after the expiration or voiding of a prior oil and gas lease executed by plaintiff in 1899. At October Rules, 1925, this bill was filed by Engel and Fred L. Fox (who had obtained an oil and gas lease from Engel in 1925) praying that the "paper of October 9, 1900," be declared null and void and removed as a cloud on Engel's title and his title quieted. The decree appealed from entered August 13, 1925, granted in full the relief prayed for.

The deed and lease declared to be void is as follows:

"THIS DEED made the 9th day of October, in the year A. D. 1900, between Israel G. Engle, of German, Otter District, Braxton County, W. Va., party of the first part, and South Penn Oil Company, a Pennsylvania Corporation, party of the second part.

WITNESSETH: That in consideration of One Dollar paid and the further sum of Thirteen Hundred and Fifty Four Dollars to be paid in 60 days (after?) a producing and paying well is completed on said farm first party do hereby grant and convey with covenant of general warranty unto the said party of the second part, its successors and assigns, the undivided one-half of all the oil and gas in and under the following described lands * * *. Subject, however, to a certain lease for oil and gas purposes made by Israel Engle to the South Penn Oil Co., dated the 21st day of October, 1899, and recorded in.............................County, in.............book at page........... And so long as said premises are operated under said lease the party of the second part hereto shall be entitled to re-

ceive one-half of the royalty provided therein to
be delivered to the party of the first part, to-.
gether with the right of ingress and egress, to,
upon and from said lands for oil and gas pur-'
poses, subject to the lease aforesaid. And fur-
ther, when the lease above recited shall expire or
become void, the party of the first part do hereby
demise and lease unto the parties of the second
part, its successors, and assigns, the land above
described for the purpose of operating for and
producing from the remaining undivided one-
half of the oil and gas contained in and under
said land (being the undivided one-half of said
oil and gas not hereby sold) for the term of twenty
years from the expiration of said lease, and as
long thereafter as oil and gas is found in paying
quantities, provided, however, that in case the
above described land is not producing oil or gas
at the time said lease of the said remaining one-
half goes into effect, it shall become void and of
no effect, within one year from such time, unless
the lesess shall pay at the rate of $33.90 Dollars
quarterly, in advance, until a well is completed,
and the party of the second part hereby agree to
pay therefor while the lease of said one-half in-
terest shall remain in force and effect the one-
sixteenth part of all the oil produced and saved
from said land, and $100.00 Dollars per year for
each and every gas well while the products there-
from is being sold and utilized of the premises.
This grant shall bind the parties, their heirs, ex-
ecutors, administrators and assigns.

WITNESS the following signatures and seals.
H. J. Rudkin

| | | |
|---|---|---|
| | Israel G. Engel | (seal) |
| (corporate | South Penn Oil Company | (seal) |
| seal) | By F. N. Clark, First Vice President.'' | |

This deed and lease was duly acknowledged by Engel and
recorded in the office of the clerk of the county court of
Braxton county on February 15, 1901.

The bill charges, in substance, that the above deed and
lease was obtained under the express representation, believed
and relied upon by Engel, that prompt development would
be made, and payment of the balance of the purchase price

within sixty days after a paying well had been drilled in; that defendant thereby schemed to obtain a one-half interest in the oil and gas so as to control its development, without being required to pay delay rentals under either of the leases; and that the agreement to promptly develop and pay the balance of the purchase price of $1354.00 within sixty days after a well was drilled in constituted a condition subsequent, the non-performance of which defeated plaintiff's title under the deed of 1900. Plaintiff says that within six months after the deed and lease of 1900, defendant surrendered its lease of 1899, never paid any rentals under its lease of 1900, which, under its terms, expired and became of no effect after one year. Engel says that he then regarded the ''paper'' of 1900 as of no further effect; and as defendant had never exercised any rights of ownership or assessed its claimed interests in oil and gas for taxation or made any overt claim, he considered it had abandoned its contract, and he executed another oil and gas lease to the Eastern Oil Company in 1916, to which defendant never excepted or objected; that in 1921 Eastern Oil Company drilled in a large producing well on an adjoining tract and desired to then develop his land, but would not do so because of defendant's deed of record; that in 1925 he executed a lease to Fred L. Fox, who was desirous of developing it, but was met with a claim of defendant to one-half the oil and gas; hence, this suit to remove the cloud and quiet title of Engel and Fox.

The answer denies the intent of defendant alleged in the bill with the respect to its purchase of one-half his oil and gas; and denies that it represented that it would promptly drill under either of its leases both of which provided for payment of delay rentals if development was not made. It is charged (and both parties agree) that $1.00 an acre or $338.50 for the fee in one-half the oil and gas was actually paid at the time the deed of 1900 was executed and delivered, and that the consideration of $1.00 mentioned in that paper was merely nominal. The answer denies that there was any condition either express or implied in the deed of 1900, a non-performance of which would defeat its title;

denies that plaintiff was ever in possession of the oil and gas
which he had deeded to defendant, but admits that he was
in possession of the surface; denies that it had abandoned
ownership, but avers that it had evidence of its fee recorded
on the public records giving notice to the world. Respondent
says that it did not protest against the lease of the Eastern
Oil Company because it never heard of any such lease until
a short time before the institution of this suit, and it is
averred that whether or not respondent placed its oil and
gas lands on the land books for taxation cannot concern its
right of ownership; and it is further averred that the state,
counties and districts have received the proper taxes on
that property. The answer denies the material allegations
of the bill and sets up some additional matters which are
not necessary to be stated here. The parties went to proof.
The evidence for plaintiff given by Stalnaker, Israel Engel
and his son and daughter, is to the effect that Rudkin,
who took leases in Braxton county for defendant, and who
obtained the deed of 1900 from Engel, represented that
there would be early development by reason of the leases; and
Engel (who was 91 years of age at the time of his deposition
and whose mind was not evidently very clear) and his two
children say that Rudkin represented that there would be
speedy development. It appears that Rudkin was dead at
the time of the institution of the suit, and his evidence, of
course, could not be obtained in rebuttal, if plaintiffs' evi-
dence be considered. The evidence for defendant is to the
effect that in 1900 there was no development in Braxton
county for oil and gas which was what is known as "wildcat"
territory, the nearest development being in Lewis county
many miles away, and that it was a plan of defendant to not
only lease, but to purchase interests in the oil and gas in
this wildcat territory to be held by it for future development,
and that many of its purchases amounted to nothing because
located in barren territory. Its evidence is that Rudkin
had no right or power to represent to any one that develop-
ment would be immediately or speedily made under the leases
or purchases.

To sustain the decree, appellees aver that the bill charges

and the proof sustains the charge that the deed was obtained under false and fraudulent representations; that the bill charges that the deed was upon condition subsequent as evidenced by the deed itself, and non-performance of the condition subsequent defeated plaintiff's title; that defendant had abandoned its title under the deed and plaintiff had been in continuous possession of the land since at all times. The trial chancellor in a written opinion which was made a part of the record refused to consider plaintiffs' evidence for the purpose of changing or modifying the terms of the written instrument, but did consider that evidence in connection with the proper construction of the deed, holding that the deed was ambiguous on its face. He did not find that the deed was procured by fraud and misrepresentations. The decree is based upon the written opinion of the chancellor wherein he found that the deed properly construed, created and provided for a condition subsequent, which defeated the grant, that condition being prompt development and payment of the balance of the purchase price within sixty days after a paying well was drilled thereon.

Appellees contend that a case of fraud and misrepresentations is made out under the allegations and proof. Granting, without holding by any means, that a case of fraud is made out, plaintiff cannot succeed on that theory, because as far back as 1916, he knew that he could not lease the entire oil and gas under his lands, because of his deed of 1900 to defendant. The Eastern Oil Company in making its lease with him agreed only to pay his proportionate share of the royalty under that lease and tendered to him and finally paid him on the basis of his one-half ownership of the oil and gas only; and he says that the reason given by the Eastern Oil Company for not developing his land was because of his deed of 1900. Instead of promptly proceeding to set aside this deed as fraudulent and void, he waited until 1925 before he instituted his action and the defendant had lost its only witness to the transaction. Rudkin was dead. The alleged fraud is pleaded as an idea conceived by defendant to obtain a portion of the oil and gas in place, avoid payment of rentals under the lease, and control the property and its develop-

ment, a purpose concealed by its agent in obtaining the grant under the promise of prompt development. When did the fraud alleged (if any is here properly pleaded, *Loomis* v. *Jackson,* 6 W. Va. 613; *Lumber Company* v. *Rose,* 87 W. Va. 484), or the false representations come to the knowledge of plaintiff Engel? On October 9, 1901, the lease of 1899 was returned to him and he receipted therefor, releasing defendant from the obligations thereunder in express terms. The delay rentals had been paid up to that time, a year had expired and yet no prompt development. From then on, no delay rentals under the 1900 lease were paid and no development. Surely Engel then had notice of the alleged fraud. He made no demand for prompt drilling, or demand of any character. He did not call upon defendant to fulfill its alleged promise. It is argued that he thought defendant had abandoned its purchase, and yet there was the deed on record notifying him and the world that the title to one-half his oil and gas was owned by defendant. He waited with this knowledge until the territory was proved and testimony was lost before attempting to avoid his deed for the alleged fraud. Under these circumstances the charge of fraud has become stale, and laches prevents relief in a court of equity. *Mc-Mullin* v. *Pritt,* 103 W. Va. 582; *Carter* v. *Price,* 85 W. Va. 744.

We now come to the point on which the lower court based the decree, namely, the existence of a condition in the grant and the non-performance which defeated it. The deed of October 9, 1900, contains provision for a lease of the other one-half of the oil and gas not sold upon certain terms therein set out. The title to one-half and the lease of the other one-half are separate and independent. The deed is absolute, and conveys by apt and proper words. There can be little question that the grantor intended to and did convey the undivided one-half of the oil and gas in place. The lease but accentuates the sale, for it operates upon the other half only. *Oil Company* v. *Haught,* 71 W. Va. 720. What language or expression in the deed and lease indicates that this absolute grant of title shall fail if the grantee does not perform some condition therein contained? The trial chancellor

found a condition subsequent, the non-performance of which defeated the grant. The condition was that defendant should drill promptly and pay the balance of purchase price. All of the text writers and the decisions say that conditions subsequent are not favored as they tend to destroy vested estates. Hence, the rule of construction is that if it be doubtful that a provision in a deed is a condition or a covenant, the latter will always be adopted. And a condition subsequent must be created by express terms or clear implication. Even when there are apt words for the creation of a condition, yet if there be no provisions for re-entry or forfeiture or reverter, the courts will not hold that a condition has been created, but will look to the whole·deed, the situation of the parties and their relations, and the acts to be performed to determine the true intent of the parties in using apt and proper words for the creation of a condition. *Sands* v. *Holbert,* 93 W. Va. 574, citing *Scoville* v. *McMahon,* 62 Conn. 378; *Faith* v. *Bowles,* 86 Md. 13; 2 Tip Real Property, section 79; *Millan* v. *Kephart,* 18 Grat. 1; 2 Dev. Deeds (3rd ed.), section 970; *Haydon* v. *Railroad,* 222 Mo. 126; *Woodruff* v. *Woodruff* (N. J.), 1 L. R. A., 380; *Hoyt* v. *Kimball,* 49 N. H. 322; *Packard* v. *Ames,* 16 Gray 327; *Kilgore* v. *County Court,* 80 W. Va. 283, wherein it is said on p. 286: ''However, in order that the language in a deed may be given the effect of a condition subsequent it must clearly appear that the parties intended that, in case of the grantee's failure to use the land for a particular purpose, *or to do a particular thing,* he should forfeit his interest therein;'' *Railway* v. *Honaker,* 66 W. Va. 136; to which may be added *Brown* v. *Caldwell,* 23 W. Va. 187. To the same effect is 18 C. J., p. 355, sec. 370, which says: ''The condition must be fairly expressed in the deed, and apt and sufficient words employed. In other words, in order that a clause or proviso shall constitute a condition subsequent, the intention of the parties must be clearly expressed in some words importing that the estate is to depend upon a contingency provided for.'' And in 8 R. C. L., p. 1101, section 159, it is said: ''A provision merely that the deed is given and accepted on an express agreement on the part of the grantee to do certain things imports a personal

covenant rather than a condition." These well settled rules
of construction must be applied to the deed before us. No
condition either precedent or subsequent is raised by any
apt or proper terms found in this deed. There is no clause
of forfeiture or reverter upon the failure of the grantee to
do any particular thing. There is nothing to import a condi-
tion subsequent. The deed provides for payment of the bal-
ance of purchase money within sixty days after a paying
well is drilled in, but we do not find that the grantee was
required to do the drilling. Under the lease of 1899 it was
not required to drill if it paid delay rentals, and it had the
right to surrender that lease which it did. The deed itself
contemplated that the lease of 1899 might expire or become
void without a well being drilled, in which case the grantee
was given a lease on the one-half not sold for a period of
twenty years from its expiration, if the lease was then pro-
ducing, or for one year thereafter if not producing, upon
paying rentals until a well was completed. Nothing in the
language used supports the contention that a well was to be
drilled forthwith. Nor is there any intimation that the grant
should be forfeited and the fee revert if drilling was not
done. It was "wildcat" territory, and the gas would have
no market and no means of transportation to a market if
found. Even if there was an express promise to drill with
dispatch (as the verbal testimony would indicate) that prom-
ise was more of a covenant than a condition subsequent de-
feating the fee; and the verbal testimony (even if it could
be considered, and which is unimportant to decide) does not
hint that a forfeiture or reverter of the fee was agreed upon
or would follow. It is argued that Engel must have under-
stood that his land was to be drilled within a reasonable time,
or he would not have deeded away one-half of the oil and
gas, because the time for payment of the balance of the pur-
chase money was indefinitely postponed. He was getting a
substantial payment for supposed oil and gas in "wildcat"
territory, and if he so understood, his failure to incorporate
that understanding in the deed which is the repository of
understandings and intentions of the parties, he cannot now
have defendant's title forfeited under the well settled rules

of law above stated. He was of mature age, and if he made a bad contract, the courts cannot make a better contract for him. He made a good contract if the territory had been barren. The law favors the vesting of estates and is always adverse to their destruction after they have been vested. The claim that defendant abandoned its title is not well taken. Its deed was on record giving notice of its title to all persons, and the possession of the surface of the land by its co-tenant in the oil and gas inured to its benefit. No offer is made by plaintiff to refund the part of the purchase price paid to him, possibly on the theory of fraud.

We do not mean to say that plaintiff has no remedy, but we can find no basis in law on which to declare that the deed he made is a cloud upon his title. Without apt and proper words importing a condition subsequent, without words of reverter, we are asked to find such condition subsequent by construing the deed to mean that the parties so intended. All rules of construction prevents such holding. Hence, there is no equity in the bill as developed by the evidence, and the decree will be reversed and annulled; and proceeding to do what the lower court should have done, the bill will be dismissed.

*Decree reversed; bill dismissed.*