## Rice et al. v. Blanton.

(Decided December 17, 1929.)

FRED HOWES for appellants.

WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

J. M. Blanton brought this suit against George B. Rice and his brother, Sherman Rice, to quiet his title to the oil and gas underlying certain land in Johnson county. On final hearing the chancellor entered a decree in his favor, and the defendants appeal.

It appears that on December 26, 1912, Blanton and his wife, in consideration of $12.50 per acre, of which $500 was paid in cash, and the balance to be paid on the execution and delivery of a good and sufficient deed with covenant of general warranty, sold and conveyed to George B. Rice and Sherman Rice the following described property:

"All the coal minerals and mineral products, fire and potters clay, all iron and iron ore, all stone

and the exclusive rights of way for any and all rail-
road and ways and pipe lines that may hereafter be
located on said property by the grantees, their heirs
or representatives or assigns or by any person or
corporation, under authority of the said grantees
their heirs or representatives or assigns in, of,
under, concerning or appurtenant to the hereinafter
described tract of land, together with the right to
enter upon said land, use and operate the same and
surface thereof, and make use of, and for this pur-
pose, divert water courses thereon, in any and every
manner that may be deemed necessary or convenient
for mining and therefrom removing or otherwise
utilizing the products of said minerals and for the
transportation therefrom of said articles, and the
right to use of such as well for the removal of the
products taken out of any other lands, owned or
hereafter acquired by the grantees, their heirs or
representatives or assigns, and the right to erect
upon the said land, maintain, use, and at pleasure,
remove therefrom all such buildings and structures
as may be necessary or convenient to the exercise
and enjoyment of the property, rights and privileges
hereby bargained, sold, granted or conveyed; and
the use of said land and surface thereof by the
grantees, their heirs or representatives or assigns,
grantees and their heirs, representatives and as-
signs shall be free from and is and are hereby re-
leased from liability or claim of damage to the said
grantors, their representatives, heirs, and assigns.
Free access to and upon and over the said land is
hereby conferred upon the grantees, their heirs, and
representatives, and assigns, for the purpose of sur-
veying and prospecting the aforesaid land, property
rights, privileges and interests; and there is re-
served to the grantor, all the timber upon said land
and the free use of land for agricultural purposes, so
far as the use is consistent with this property, rights
and privileges hereby bargained, sold, granted or
conveyed, and the right to mine and use coal for
grantors own personal household and domestic pur-
poses.''

On April 8, 1913, Blanton and wife executed a deed
pursuant to the contract by which they conveyed to the
Rices ''all the coal, minerals, and mineral products, fire

and potters clay; all iron and iron ore; all stone and the exclusive rights of way for any and all railroads and ways and pipe lines that may hereafter be located on said property by the grantees," etc. Prior to December 26, 1912, the parties had been negotiating, and on that day they met in Paintsville at the office of W. H. Vaughan, who acted as attorney for the Rices. A contract was prepared and presented to Blanton and wife for their signatures. Blanton, who was unable to read or write, says that the contract as read to him included oil and gas. Thereupon he told the parties that he had not sold the oil and gas and would not sign the contract with the oil and gas included. After he had made this statement, Mr. Vaughan asked George Rice if anything had been paid on the contract. George said, "No," and B. Vaughan then said, "I will draw up another one without oil and gas." The contract which he signed was then drawn up, and both Vaughan and George B. Rice stated that it did not include oil and gas. Later on he signed the deed which did not mention oil or gas. George Rice testified that it had been some time, and he could not recall all the things that happened, but had no recollection of the occurrences detailed by Blanton, and did not think but one contract was drawn up. He was present all the time. Sherman Rice testified that he heard that Blanton objected to the first contract because it contained oil and gas, and supposed that that was the reason why the second contract was drawn.

Appellants insist that the words "All minerals and mineral products" include oil and gas, and that oral evidence was inadmissible to show that they were not intended to be included in the contract or deed. If the instruments had used the words "all minerals and mineral products," and no more, doubtless there would be merit in the contention. This is a case where much depends on the punctuation. In the copy of the contract before us there is no comma between the words "coal" and "minerals." Therefore there is some basis for the view that the word "coal" was not used as a noun, and therefore to designate a separate and distinct mineral, but was used as an adjective for the purpose of defining and qualifying the words "mineral and mineral products." This construction finds support in the employment of the words "fire and potters clay, all iron and iron ore, all stone," thus showing an intention to convey what might be termed hard minerals as opposed to minerals

like oil and gas. · In the circumstances we agree with the chancellor that the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, thus presenting a situation where extrinsic evidence may be resorted to as an aid in its construction. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S. W. 1101, 17 A. L. R. 148; McKinney's Heirs v. Central Ky. Nat. Gas Co., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934.

When such evidence is considered, we find the positive statement of Blanton that the contract as originally drawn included oil and gas, that he refused to sign it, and that the new contract of December 26, 1912, was then drawn with the words "oil and gas" excluded. Not only so, but Sherman Rice admits that he heard that Blanton refused to sign the contract because it included oil and gas. Opposed to this evidence is the statement of George Rice that he had no recollection of the occurrences detailed by Blanton, and that he thought there was only one contract. It is apparent, therefore, that the evidence preponderates in favor of appellee, and that the court did not err in holding that the oil and gas did not pass by the deed. In reaching this conclusion, we do not overlook the fact that both the contract and deed used the words "pipe lines," thus indicating that oil and gas were conveyed. As the original contract included oil and gas, the provision for pipe lines was peculiarly appropriate, The only ground on which appellee objected to and refused to sign the contract was that the words "oil and gas" were included. When the new contract was drawn with those words omitted, the parties regarded the change as sufficient to effectuate their intention and, in the circumstances, the mere fact that the pipe line provision remained in the contract cannot be regarded as sufficient to overcome the positive evidence as to the agreement made by the parties.

Another contention is that the chancellor sustained exceptions to appellee's testimony concerning transactions with Mr. Vaughan, who was dead at the time he testified, and with the evidence omitted there was not sufficient evidence to sustain the finding of the chancellor. Section 606, subsec. 2, Civil Code, provides:

> Subject to the provisions of subsection 7 of this section, no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant

under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place or when such act was done or omitted. . . .''

It will be observed that under this section one may testify for himself concerning a transaction with a person then deceased for the purpose and to the extent of effecting one who is living, and who, when over fourteen years of age, and of sound mind, was present when such transaction took place. George Rice was one of the purchasers. In carrying on the negotiations, he acted for himself and as agent for his brother Sherman Rice. He was present during the entire transaction of December 26, 1912, and was over fourteen years of age and of sound mind. The evidence affects him and his brother Sherman Rice, both of whom are still living. In the circumstances, appellee's evidence as to what occurred during the transaction was admissible, and may be considered by this court.

Judgment affirmed.