RUSSELL G. CARDER *v.* EDGAR MATTHEY *et al.*

(No. 9510)

Submitted February 15, 1944. Decided March 21, 1944.

*Harvey W. Harmer* and *L. G. Williams,* for appellants.
*P. Douglas Farr* and *S. A. Powell,* for appellee.

FOX, JUDGE:

On July 18, 1921, Edgar Matthey and R. J. Matthey, his wife, conveyed to Russell G. Carder a tract of ninety-three acres of land situate in Doddridge County, subject

to certain exceptions and reservations set out in the deed, covering coal and natural gas, and the timber standing and being on said land. The reservation and exception as to the timber reads as follows:

> "There is reserved and excepted from this conveyance the following: * * *
> "Third: All saw timber, except what is in the cleared land, with the right to set a saw-mill on said premises and manufacture said timber into lumber and to move same off in a reasonable time after cut and sawed, but the said party of the second part is to have three thousand feet of saw timber out of said timber herein reserved and when said second party clears any of said timber land, he shall give notice to the said parties of the first part their heirs or assigns, and they shall remove said timber in a reasonable time or forfeit the right to said timber on such ground, cleared."

There is little, if any, dispute as to occurrences relating to the removal of the timber, subsequent to the date of the conveyance aforesaid. We may take the testimony of the plaintiff as the basis of our decision. According to that testimony, defendant, Edgar Matthey, sold some rig timber from said land some ten or fifteen years prior to the date when such testimony was taken, in March, 1942, and the plaintiff had sold some mine props from the lands about five years prior to the date of his testimony. The plaintiff testifies that he said nothing about the removal of the timber in question until about five years after the date of his deed, at which time he asked Matthey to remove the timber; and was told that he, Matthey, would cut the timber as soon as he could get a sale for it. The plaintiff was then asked, "When was the last time you talked with Mr. Matthey, about this timber?", to which he replied, "The last time we started in was last spring, I believe it was last March. I was out and talked to him. I saw him that time also at Mr. Shahan's store." At one time the plaintiff contemplated clearing some part of the ninety-three acres and gave no-

tice to Matthey of his intention. Matthey later requested the plaintiff to deaden the timber on the land he proposed to clear, and leave it there until the following fall, and was then told by plaintiff that he would not be able to clear the land that spring, and the matter of timber removal at that time seems to have been dropped. Other conversations in relation to the removal of the timber are mentioned, the last in March, 1941. At or near that time Matthey sent plaintiff word that he would buy the ninety-three acres of land, and they discussed the matter of a sale, but could not agree on price. Then the plaintiff states in his testimony, "After we couldn't get any ways near together on the price for the farm, I began to talk to him about the timber and trying to get together to make some kind of an agreement between us, that way save any trouble with a suit or something, and I stated to Mr. Matthey, that for about the first Five (5) years that I hadn't said anything to him in regard to removing the timber, and after that I had tried at various times from then on up to the present to get him to remove the timber and I asked him if that wasn't right and he said it was." This conversation occurred in March, 1941, and this suit was instituted on September 15 of the same year. We have referred to the testimony of the plaintiff to show that there had been repeated conversations and negotiations between him and Edgar Matthey, beginning five years after the date of the deed of July 18, 1921, and continuing at intervals to within six months of the institution of this suit; and as showing that never, at any time prior to the institution of this suit, did plaintiff claim ownership of the timber in question. On the contrary, as late as March, 1941, plaintiff was trying to get some agreement with the defendant Matthey as to when the timber would be removed, and what timber would be taken. At no time was Matthey given specific notice to remove the timber, or given any intimation that plaintiff claimed ownership thereof.

On September 15, 1941, this suit was instituted in the Circuit Court of Doddridge County. The bill proceeds

upon the theory that "the defendant excepted and re-
served from the conveyance of July 18, 1921, a defeasible
fee in only that part of said timber which was saw tim-
ber at the date of the said deed, with the implied con-
sideration that said excepted and reserved timber would
be removed by said defendant from said land within a
reasonable time after the date of said deed;" and then al-
leges plaintiff's ownership of the timber now on said
land. It further avers that defendant Edgar Matthey
claimed to have the right, under said exception and
reservation, to enter upon said land and cut and remove
the timber of every size and description therefrom; and
also that the reservation and exception standing upon
the records constitute a cloud upon the title of plaintiff
to his land, and the timber thereon, and tend to depreciate
the value thereof and render plaintiff's title thereto un-
marketable. It is also averred that Matthey threatened
to enter immediately upon said land and cut and remove
the timber. The prayer of the bill is that "the afore-
said saw timber reservation contained in said deed be
decreed to have been determined and defeated, and that
the defeasable title of the defendants thereunder be de-
creed to be determined and defeated; that said exception
and reservation be cancelled and held to be null and
void and of no effect whatever, and as a cloud upon the
title to said real estate of your plaintiff may be re-
moved." The prayer further asks for an injunction re-
straining the removal of the timber.

The defendants' answer, while admitting certain al-
legations of the bill, particularly their claim to the tim-
ber and their intention to remove the same, denies in ef-
fect that anything therein contained furnishes any basis
for a decree which would deprive the defendant, Edgar
Matthey, of the right to cut and remove the timber ex-
cepted from the conveyance of July 21, 1921. Testimony
was taken and the case submitted for final hearing. On
November 24, 1942, the circuit court entered a decree
granting to plaintiff the relief prayed for, and specifically
decreed that "the defeasable fee title of the defendants

Edgar Matthey and R. J. Matthey, which was reserved and excepted as the third item of reservations, in that certain deed between the said Edgar Matthey and R. J. Matthey as grantors and the said Russell G. Carder as grantee, bearing date on the 18th day of July, 1921, * * * has been determined and defeated, and all of the right and title of the defendants which was excepted and reserved by them, in the aforesaid timber have been determined and defeated, and the title in and to all of the timber now upon the aforesaid land, together with the right to remove said timber, is now vested in the plaintiff, Russell G. Carder; that the aforesaid exception and reservation of timber is now null and void and of no effect whatsoever as a claim and cloud upon the title of the plaintiff Russell G. Carder to the aforesaid timber; that the defendants Edgar Matthey and R. J. Matthey, each of them and their agents, servants and employees, be and they are hereby forever and perpetually enjoined, inhibited and restrained from removing and from cutting from the aforesaid tract of land any trees and/or timber whatsoever". From that decree we granted this appeal.

The question of the right of the owner of land to have removed therefrom timber which he has conveyed, or which has been excepted and reserved in a conveyance to him, and where in either case no time limit for such removal is specified, has been before this Court in a number of cases. In *Keystone Lumber & Mining Co.* v. *Brooks*, 65 W. Va. 512, 64 S. E. 614, it was held that, "In case of a deed conveying legal title to timber, though the deed contemplates removal of timber, there being no limit of time for removal and no clause of forfeiture for failure to remove, title to the timber is not lost to the purchaser for such failure." We assume the same rule would apply where, as in this case, a grantor excepted from his conveyance the title to the timber on land conveyed. The case cited above did not undertake to fix a time within which the timber would have to be removed, but later cases adopted the rule that, "Ordinarily if a deed for timber does not prescribe the time within which it

is to be manufactured into lumber, and the lumber removed from the land, the grantee must remove it within a reasonable time, or lose the benefit of his purchase." *Hill* v. *Vencill,* 90 W. Va. 136, 111 S. E. 478; *Williams* v. *McCarty,* 82 W. Va. 158, 95 S. E. 638, 100 S. E. 565; *Stump* v. *Moore,* 104 W. Va. 513, 140 S. E. 480; *Joyce* v. *Gibson,* 106 W. Va. 221, 145 S. E. 279; *Jones* v. *Gibson,* 118 W. Va. 66, 188 S. E. 773. In the *Vencill* case it was held, "Although such a deed vests title to the timber in a grantee, it does so only upon condition that he remove it within a reasonable time. What is a reasonable time depends upon the facts and circumstances of each case requiring its application." It appears, therefore, to be settled law that a conveyance of timber, or an exception thereof, vests in the grantee, or the person excepting the timber, the right to remove the same within a reasonable time, where no specific time therefor is fixed, but this rule should apply only to cases where there are no intervening circumstances, contract provisions or equities which would make its application result in an injustice. It will be noted that in most of the cases cited above the right of the original owner of the timber to remove the same was upheld, the circumstances requiring such action.

The plaintiff's bill proceeds upon the theory, and the decree of the court holds, that what the defendants excepted in their deed of July 18, 1921, was a defeasible fee subject to be determined and defeated upon their failure to remove the timber excepted within a reasonable time. Obviously, this theory is based upon the cases cited above, but its application clearly takes from one party title to property and vests it in another; and whatever else it may be called, such procedure amounts to a forfeiture. The very language of the deed in question treats the failure to remove the timber from cleared land as a forfeiture of the right to remove. In *Stump* v. *Moore* and *Hill* v. *Vencill, supra,* loss of right to remove timber is referred to and treated as a forfeiture. Aside from these considerations,

how can the plaintiff get title to the timber in question except through the forfeiture of the right of the defendants to remove the same? The timber never was conveyed to the plaintiff. It was expressly excepted from the conveyance of the land on which it stands. The plaintiff gets title, if at all, through the operation of the condition implied in law, that the timber so excepted will be removed within a reasonable time; but that result can only be reached through the forfeiture of the right which defendants originally had to cut and remove the same.

It is familiar law that forfeitures are not favored in courts of equity. We have only to cite *Hukill* v. *Meyers,* 36 W. Va. 639, 15 S. E. 151; *Craig* v. *Hukill,* 37 W. Va. 520, 523, 16 S. E. 363; *Headley* v. *Hoopengarner,* 60 W. Va. 626-646, 55 S. E. 744; *Pyle* v. *Henderson,* 65 W. Va. 39, 63 S. E. 762; *Newton* v. *Kemper,* 66 W. Va. 130, 66 S. E. 102, to show that not only will a court of equity ordinarily refuse to act affirmatively in the enforcement of a forfeiture, but will often relieve against it. "A condition subsequent defeating the title upon non-performance must be clearly expressed or arise by necessary implication from the language used in the deed."; "After an estate has been vested by apt and proper deed the courts will always construe the deed so as to prevent a forfeiture or defeasance of the estate conveyed thereby, if possible." *Engel* v. *South Penn Oil Co.,* 106 W. Va. 339, pts. 2 and 3 syl., 146 S. E. 385.

We do not question the rule laid down in *Hill* v. *Vencill* and subsequent cases cited above; but even so, the question of whether a person should lose his right under the rule announced therein depends on the facts of the case. No fixed period of time is or can be laid down for all cases. In the case at bar approximately twenty years passed from the date of the deed in question and the institution of this suit. If we had before us a simple exception of the timber, without specification of time for removal, and nothing more, it might be said that, under the rule announced in the cases above con-

sidered, the defendants had lost title thereto; but is this such a case? In the first place, the exception itself is uncertain as to when it was contemplated that the timber should be removed. Construing it one way, we would be justified in holding that the removal was required to be made within a reasonable time; but there is a provision therein which leaves this construction in doubt, because, under that provision, the removal of the timber could be required at any time the owner of the surface desired to clear any of the land, upon giving notice of his intention to do so; and it is then provided in such a case that failure to remove timber within a reasonable time would forfeit his right to said timber on the ground cleared. Nothing is said about the forfeiture of any timber for failure to cut and remove the same. Then the parties from time to time negotiated as to the removal of the timber. Some five years after the date of the deed plaintiff says he requested that the timber be removed. After that date Matthey sold some rig timber, and apparently no objection was made thereto. At some other date the plaintiff removed some mine props. At one time the plaintiff contemplated clearing some of the land and notified Matthey of his intention, but nothing resulted from this because plaintiff decided later not to clear. We are justified in saying that many conversations took place between these parties in relation to the removal of the timber, continuing to within six months of the date of the institution of the present suit. The plaintiff says he was, at that late date, trying to get an agreement with defendant as to the removal of the timber. At no time prior to the institution of this suit did plaintiff make any claim of ownership. We think the record shows that plaintiff acquiesced in the failure to remove the timber in such a way as to bar him from maintaining his present suit at this time. We think the circumstances surrounding this entire transaction required that defendant be given notice of the plaintiff's claim, and an opportunity to remove the timber, before plaintiff was entitled to main-

tain a suit, the effect of which, we think, would be to forfeit a valuable right vested in the defendants under the deed they executed.

The decree complained of must be reversed and the case remanded to the circuit court for further proceedings. As the institution of this suit furnishes to the defendants sufficient notice of the plaintiff's claim to the timber in question, the defendants should not be permitted to further delay the removal of the timber, beyond the time reasonably necessary for the operations requisite to its removal, manufacture into lumber, and sale. That is a matter which the circuit court can determine, either upon the record as it is now made up, or upon such further proof as the parties interested may present. The question of what timber defendant Matthey is entitled to remove is also one which will have to be determined by the trial court.

We reverse the decree of the Circuit Court of Doddridge County, and remand the cause to said court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

This case was instituted in the Circuit Court of Doddridge County for the purpose of having the timber reservation quoted in the majority opinion cancelled and held for naught as a cloud upon the title to the tract of ninety-three acres conveyed to the complainant, Russell G. Carder, by Edgar Matthey and R. J. Matthey, his wife, more than twenty years before the date of the decree appealed from, or on July 18th, 1921. As against the allegations of the bill of complaint treating the title of the defendants to the timber as a *"defeasable* fee in only that part of said timber which was saw timber at the date of said deed, * * * " the answer of defendants asserts that they hold an *"indefeasable* fee in said saw timber"; that they had no duty to remove the timber from the land until notified by

plaintiff that the land had been cleared; and that Matthey now has the right to remove "all timber of every size and description in the woods thereon; * *". The trial chancellor granted the relief sought by the bill of complaint and this Court, in reversing that finding certainly did not intend to sustain the contentions of the answer and turn over to the defendants "all timber of every size and description" as they claimed, but intended that the trial court should restrict their right to what was "saw timber" at the date of the deed to Carder. To cause a reservation of this kind to speak as of more than twenty years after its effective date in agreement with the defendants' contention would be utterly groundless.

The majority opinion I think is unsound in basing its conclusion upon the assumption that complainant seeks to enforce a forfeiture. The bill does not so allege nor pray, and to me it seems clear that this Court cannot so read it without ignoring the fact that under our decisions a forfeiture cannot arise from the breach of an implied provision of a contract. It is true that the *Vencill* case (90 W. Va. 136) does speak of the noncompliance with the implied understanding in cases where the instruments under consideration do not specify a time for the removal of the timber as constituting a forfeiture of that right, and it is also true that the syllabus in the *Moore* case (104 W. Va. 513) speaks of a claimed forfeiture. To my mind neither case adjudicates in a binding sense that in this jurisdiction the forfeiture can be based upon other than the violation of an expressed provision or covenant of a written instrument. If either case does so, that finding is squarely in the teeth of the eighth syllabus of *Peerless Carbon Black Company* v. *Gillespie*, 87 W. Va. 441, 105 S. E. 517, which reads as follows: "A condition or covenant arising by mere implication will not sustain a forfeiture. It must be express." The *Peerless* case is preceded by *Core* v. *New York Petroleum Co.*, 52 W. Va. 276, 43 S. E. 128, and is followed by *McCutcheon* v. *Oil & Gas Co.*, 102 W. Va.

345, 135 S. E. 238; both of which are to the same effect. Certainly no stipulation that contemplates a forfeiture upon failure to perform, forfeiture being admittedly disfavored both at law and in chancery, would be added to a contract by legal implication, the rule being that any reasonable construction of even express language is preferred to that which would impose a forfeiture.

But conceding that the terms of an implied understanding when violated could be the basis of a forfeiture, so far as the removal of the timber within a reasonable time is concerned, that understanding, while implied, is as much a part of the written contract as though embodied within it. That being so, and the contract being one for the sale of land, it follows that Code, 36-1-3 (Statute of Frauds) applies with the result that its terms cannot be varied nor altered by subsequent parol agreements or negotiations, such as is permitted by the majority opinion. *Thompson* v. *Robinson,* 65 W. Va. 506, 64 S. E. 718; 27 R. C. L. 312. The parol evidence rule that excludes prior or contemporaneous verbal agreements but does not apply to subsequent like understandings has no application to this situation. I therefore, am of the opinion that much of the discussion of the majority opinion is inconsequential.

But viewing the case from the attitude of the majority, and conceding that the circumstances justify the consideration of a forfeiture by the violation of terms not expressly included in the instrument, and admitting further that parol evidence may be considered as changing the terms of a contract falling within the Statute of Frauds, I am even then of the opinion that upon a careful reading of the clause dealing with reservations or exceptions in the light of the evidence, which of course is to be applied with all doubt resolved in favor of affirmance, the trial chancellor's decree, based as it is on a mixed question of law and fact, should not be reversed.

It will be seen that in the deed in question there are two stipulations dealing with the right of removal of timber. The first is a part of the clause reserving the right

to "set" a saw mill on the premises for the purpose of manufacturing the timber to be cut into lumber. The grantor retains the right to remove the lumber so made within a reasonable time. With that provision we are not now concerned. The second deals with the right of the grantee to "clear" the timbered land and by clear inference gives him the right to do so at his own expense to the extent that he elects from time to time, provided that after having done so the grantee shall notify the grantor, who shall thereafter have a reasonable time in which to remove it "or forfeit the right to said timber *on such ground, cleared*" (emphasis supplied). It will readily be seen that there is no provision affecting the removal from the entire tract of standing timber by the person reserving title thereto. For that reason it is necessary to closely examine our decisions and to refer in passing to the general authorities, to the chaotic state of which West Virginia has contributed. See the exhaustive annotations to be found in 71 A. L. R. 143; 42 A. L. R. 641; 31 A. L. R. 944; 15 A. L. R. 43.

It is well established that a separate title in perpetuity to standing timber can be created by either grant or reservation if the purpose to do so is plainly expressed. Neither a simple grant nor a simple reservation, without more, under our cases and the weight of authority, has that effect, but each carries with it the implied provision that the owner of the standing timber is bound to remove it from the land upon which it stands within a reasonable time.

In the case of *Null* v. *Elliott*, 52 W. Va. 229, 43 S. E. 173, in applying a written contract in language granting timber outright, although not acknowledged, but limiting its time for removal to two years, this Court held that the limitation was a condition of sale; that the purchaser took the timber that he could remove in the specified time; and that the additional timber remained the property of the owner of the land. The opinion refers to no previous West Virginia cases on this point, but does cite general authority.

In the case of *Adkins* v. *Huff,* 58 W. Va. 645, 52 S. E. 773, 3 L. R. A. (N.S.) 649, 6 Ann. Cas. 246, which seems to be the only West Virginia case involving a reservation of timber, it was held that under the language, "Said first party, M. J. Adkins reserves and still owns all timber", there being a definite limit of the time of removal, the grantor was not vested with absolute and unconditional title to the timber reserved but that such as remained unsevered at the expiration of the time limit was the property of the land owner.

*Keystone Co.* v. *Brooks,* 65 W. Va. 512, 64 S. E. 614, involved the construction of a deed conveying the timber upon a tract of almost four thousand acres without prescribing a time within which the timber granted should be removed. The Court did not expressly overrule the *Null* and *Adkins* cases, but the single syllabus does hold that the failure to remove the timber owned separately from the remaining fee, does not cause its owner to lose his title. In spite of that holding, however, the opinion at the top of page 515 contains the following language: "Though, where there is no such time limit or condition, there is no forfeiture of title to timber, yet I apprehend that the right to keep the timber standing does not endure forever, and thus encumber the land and prevent its cultivation, but must be removed in a reasonable time." It would seem that this syllabus considered in connection with the opinion would leave West Virginia in the unenviable situation of a number of states which hold, in effect, that while delay in removing of timber does not forfeit the title thereto, it nevertheless does, after a reasonable time, end the right to remove it. This places the owner of the fee in a position where he cannot cut the timber without risking liability to the holder of its title, and the owner of the timber in the position that he cannot gain possession of his property without trespassing upon the land of another.

In *Williams* v. *McCarty,* 82 W. Va. 158, 95 S. E. 638, 646, 100 S. E. 565, the Court in effect reversed the *Keystone* case, and held that the successor in title of the

owner of the fee, as to such standing timber as had been separately disposed of by sale under a deed of trust limiting the time of removal, could, after the expiration of that time, sell the timber and retain the consideration therefor.

In *Hill* v. *Vencill,* 90 W. Va. 136, 111 S. E. 478, which involved a rather complicated state of title, the ownership of all of the timber on a tract of four hundred and eight acres being vested in one coparcener, the purpose was to partition the surface and decide the question of the ownership of the standing timber, together with the right of removal. This case definitely decides that a deed for timber which does not prescribe a time for its removal, by implication requires that it be done within a reasonable time. The second point in the syllabus reads as follows: "Although such a deed vests title to the timber in the grantee, it does so only upon the condition that he remove it within a reasonable time." The case decides also that the right of removal as it applies to a coparcener who also owns the standing timber on the whole tract, does not commence to run as against him, due to his undivided interest in the entire boundary, until that boundary is partitioned and that then the reasonable time for the removal of the timber does not apply to the boundary acquired by him but merges with the absolute ownership, but as to the remainder of the original boundary the time limit begins to run.

In *Stump* v. *Moore,* 104 W. Va. 513, 140 S. E. 480, it is held, the syllabus referring to the first and third syllabi in *Hill* v. *Vencill,* 90 W. Va. 136, 111 S. E. 478, that in a grant of timber specifying no time for its removal a reasonable time is implied, and that the length of time depends on the facts in each case.

Our most recent case dealing with the question, although there is no applicable syllabus, is that of *Jones* v. *Gibson,* 118 W. Va. 66, 188 S. E. 773. This case recognizes that by clear and explicit language "an estate in perpetuity, in standing timber" can be created, but that if timber is separated from the remaining fee and granted

without any limitation fixed for the time of its removal, that it must be removed within a reasonable time to be determined by the circumstances of each particular case.

It will be seen from the foregoing recapitulation of the West Virginia cases that they are far from being in harmony and that there has been little effort to reconcile them. Upon careful reading, it will be found that their use of terms is not helpful. Consequently, I wish to deal shortly with some of the problems presented.

To what does the fixing of the time by the circumstances in each particular case refer? In examining this question, to my mind, there are two matters that must be kept constantly in mind; first, that the deed speaks as of the time of its execution and delivery, and second, that the terms of a deed cannot be altered nor superseded by a subsequent verbal agreement. Of course, that does not consider the matter of estoppel, which does not relate to the instrument itself, but is to the effect that the terms of an instrument may not be enforced by a person who has knowingly placed himself in a position where to do so would be an alteration of position to the injury of another. But here the defendants claim full ownership under the terms of the reservation, not estoppel. It is also to be remembered that a reasonable time does not, except by inference, relate to the *beginning* of removal operations, but that it does mean their *completion*. Consequently, the circumstances of each particular case depend upon the size of the tract, the nature of the land, the means of transportation, the available labor, and other possible factors. The beginning of the reasonable time period, of course, cannot be before the right of entry for the purpose of removal commences. If this is delayed beyond the time that the instrument transferring the timber goes into effect, it would certainly be inequitable to start the period for removal then. On the other hand, to delay its starting after the facilities to do so became available would be equally unfair.

A deed speaks as of the time of its execution and delivery and the description of the property conveyed is

not to be later altered by parol. Code, 36-1-1. Consequently a transfer by reservation of timber applies only to trees that are then to be considered as being timber. Prior or contemporaneous oral understandings are merged and cannot affect this description, although the conduct of the parties subsequent to the deed's going into effect may operate as a practical construction of an ambiguity. Here we are dealing with a legal implication and have no ambiguity. We are confronted only with the legal effect of the implied understanding between the parties to the deed concerning the reasonable time for the removal of the timber then in existence. That reasonable time cannot be a period long enough to render impossible the identity of what was standing timber at the date of the deed. In this case that could be determined exactly only by counting the annulations of the trees, thus determining their present age and their size twenty years ago, and that could only be done with felled, not standing, timber. The owner of the remaining freehold is, of course, interested in the removal of timber from which while left standing he will receive no benefit, and which to him will be only a burden by preventing other uses of the land and the growth of undersized trees. For this reason the implied understanding concerns the removal, the entire taking away, of the timber, which must be completed within a reasonable time. Some of the cases have gone so far as to hold that notice has the effect of accelerating the lapse of a reasonable time for removal, and consequently affects the commencement of operations for that purpose. *Boults* v. *Mitchell,* 15 Pa. 371; *Patterson* v. *Graham,* 164 Pa. 234, 30 Atl. 247; *Gregg* v. *Birdsall,* 53 Barb. (N. Y.) 402. See also Note, 55 L. R. A. 513, 535. Others that mere severance constitutes removal. *Williams* v. *Flood,* 63 Mich. 487, 30 N. W. 93; *Hicks* v. *Smith,* 77 Wis. 146, 46 N. W. 133.

To my mind, as to the nature of the title there is no material difference between provisions that limit the right of removal of timber to a specified period and those which place no limit on that right. In principle, if they

contemplate all timber, they create exactly the same title. Therefore, the parties concerned not having agreed upon this essential, I think it should be considered as equivalent to a grant upon a condition precedent, the operation of which continues for a reasonable time allowing the removal of all or any part of the timber involved from the land upon which it stands. During that time the right of entry, the right to fell timber, and the necessary haulage rights are integral parts of the right to remove. Compliance and the complete vesting of title in the timber takes place as its claimant executes his right of removal and operates only to the extent that he exercises that right within a reasonable time of having acquired it.

As stated, a reasonable time under all the cases depends upon all the surrounding circumstances including the size of the tract, the terrain, available labor, and other pertinent considerations. Here we have a tract of but ninety-three acres not more than half of which has standing timber. The time during which operations looking to removal have not been even started exceeds twenty years. Certainly it would take but little proof to show that twenty years is an unreasonable length of time to be consumed in *actually removing* the timber from slightly more than forty-eight acres of land located in a farming section on a paved highway. I believe this record, overlooking the questions of forfeiture and of the Statute of Frauds, first discussed, so shows. Therefore I would affirm the decree of the trial chancellor.