Carl **BAILEY**, Appellant,

v.

**K.Y.B.C. LAND CORPORATION,**
Appellee.

No. 1999–CA–002996–MR.

Court of Appeals of Kentucky.

Feb. 9, 2001.

John R. McGinnis, McBrayer, McGinnis, Leslie & Kirkland, Greenup, KY, Brief for Appellant.

Michael de Bourbon, Pruitt & de Bourbon Law Firm, Pikeville, KY, Brief for Appellee.

Before DYCHE, HUDDLESTON, and KNOPF, Judges.

*OPINION*

KNOPF, Judge:

This is an appeal from a judgment of the Pike Circuit Court in a condemnation action which dismissed the claim of the owner of the surface estate to a portion of the

proceeds of the condemnation of the mineral estate. We agree with the trial court that the surface owner's right to remove coal for household use does not constitute a limitation on the extent of the mineral estate, and is not compensable in this proceeding.

The underlying facts of this action are not in dispute. On April 20, 1993, the Commonwealth of Kentucky, Transportation Cabinet, Department of Highways (the Commonwealth) filed separate condemnation actions against the surface and mineral estates of the same tract of land located in Pike County, Kentucky. At the time the condemnation action was filed, the appellant Carl Bailey was the owner of the surface estate, and the appellee KYBC Land Corporation (KYBC) owned the mineral estate. This case involved the condemnation action against the mineral estate. The case was set for trial and was settled on the day of trial for $215,000.00, representing all of the mineral rights which the Commonwealth sought to condemn.[1] After the settlement, KYBC argued that it was solely entitled to the proceeds from the condemnation of the mineral estate. Bailey responded that he had a compensable interest in the mineral estate due to a reservation in his deed of the right to take coal for household use. The trial court disagreed with Bailey, and ordered all proceeds of the condemnation action disbursed to KYBC. This appeal followed.

In 1887, the surface and mineral estates of the subject property were severed. However, the deed reserved to the owner of the surface estate "the right to mine coal therefrom for our household use." Bailey argues that this right was reserved from the conveyance of the mineral estate and runs with the land. KYBC contends that the reservation is merely a permission for the surface owner to gather coal for household purposes, or at most, a reservation of rights to the surface estate. Thus, KYBC asserts that any compensation for the condemnation of this right would be appropriate only in the condemnation action involving the surface estate.

During the 19th Century, it was apparently common for a grantor of mineral rights to reserve a right to use or mine coal for household purposes. We have found a number of Kentucky cases which mention such provisions in deeds.[2] None of these cases, however, directly consider the nature of the reserved right to mine and use coal for household purposes. Nor do we find any foreign authority which is directly on point.[3]

However, we find some of the analysis in the West Virginia case of *McMullin v. Pritt*,[4] to be instructive. In *McMullin*, the Supreme Court of Appeals of West Virginia considered the implications of a similar reservation in a deed. In 1861, the grantors (McMullin and Morrison) conveyed the surface estate of a 74¼ acre tract to the Youngs. Although the exact wording of

---

1. In its condemnation petition, the Commonwealth named all parties who appeared to have an interest in the mineral estates, including KYBC and Bailey. By the time of the settlement, all other parties had been dismissed.

2. *Blue Diamond Coal Co. v. Neace*, Ky., 337 S.W.2d 725 (1960); *Buchanan v. Watson*, Ky., 290 S.W.2d 40 (1956); *Blue Diamond Coal Co. v. Press Eversole*, Ky., 253 S.W.2d 580 (1952); *Elk Horn Coal Co. v. Johnson*, Ky., 249 S.W.2d 745 (1952); *Federal Gas, Oil & Coal Co. v. Moore*, 290 Ky. 284, 161 S.W.2d 46 (1941); *North–East Coal Co. v. Hayes*, 244 Ky. 639, 51 S.W.2d 960 (1932); *Rice v. Blanton*, Ky., 232 Ky. 195, 22 S.W.2d 580 (1929);

*Bailey–Ferguson Coal Co. v. Kennedy*, 219 Ky. 819, 294 S.W. 467 (1927); *Case v. Elk Horn Coal Corporation*, 210 Ky. 700, 276 S.W. 573 (1925); *McIntire v. Marian Coal Co.*, 190 Ky. 342, 227 S.W. 298 (1921); *Webb v. Webb's Guardian*, 178 Ky. 152, 198 S.W. 736 (1917); and *Virginia Iron, Coal & Coke Co. v. Dye*, 146 Ky. 519, 142 S.W. 1057 (1912).

3. See also *Phipps v. Leftwich*, 216 Va. 706, 222 S.E.2d 536 (1976); *Virginia Iron, Coal & Coke Co. v. Crane's Nest Coal & Coke Co.*, 102 Va. 405, 46 S.E. 393 (1904); and *Bruen v. Thaxton*, 126 W.Va. 330, 28 S.E.2d 59 (1943).

4. 103 W.Va. 582, 138 S.E. 384 (1927).

the deed is not set out in the opinion, the court states that "[a]ll coal and other minerals were reserved, except that the grantees were given the privilege of using coal for household purposes."[5] In 1882, the Youngs conveyed the tract to Matheny, but without the reservation of the coal and other minerals.

Later, Matheny sold off parcels of the tract to other individuals. Eventually, the successors in interest to McMullin and Morrison brought an action to quiet title against the owners of the surface estates who now claimed an interest in the mineral estate. Among other issues presented in the case was whether the provision in the 1861 deed which allowed the Youngs to use coal for household purposes was a personal or real covenant.

However, the Supreme Court of Appeals of West Virginia did not reach this issue, stating:

It is not necessary to decide in this case whether the privilege of using coal for household purposes granted in the deed to Young, Trustee, was a personal or real covenant. If personal, it ended with the conveyance in 1882 to Matheny. If real, it passed with land to Matheny, but it was *only one right*. Its enjoyment was limited to one family. It is not such a privilege as is practicable to apportion to the several grantees of Matheny, under the rule announced in *Dickinson v. Hoomes*, 49 Va. 353, 8 Gratt. 353, and 15 C.J. 1259 (Sec.80). It could not pass to every grantee of a small portion of the 74 1/4–acre tract. Otherwise, what was originally designed as one right could be indefinitely multiplied, and instead of one family using coal as many families would have that privilege as there were subdivisions of the 74 ¼ acres. See Washburn, *Easements*, 4th Ed. sec. 12c. *Pierce v. Kea-tor*, 70 N.Y. 419, 26 Am. R. 612; *Wilder v. Wheeler*, 60 N.H. 351.[6]

It is well established in the law that the intentions of the parties to a conveyance must be construed from the four corners of the instrument.[7] In both *McMullin* and in the present case, the original grantor reserved a right to the owner of the surface estate to mine and use coal for household purposes. While the reservation in this case is more clearly a real covenant than the "privilege" at issue in *McMullin*, it is nevertheless a single and limited right which inures only to the benefit of the owner of the surface estate.

Furthermore, the 1887 deed does not limit the extent of the mineral estate conveyed. The surface owner's right to use coal for household purposes is subject to the rights of the owner of the mineral estate, who has the right to remove all of the coal from the property, including the surface coal. Indeed, the deed also gives the owner of the mineral estate the right to use the surface to build any roads or rail which are necessary to remove the minerals. When viewed in this context, Bailey's right to mine and use coal for household purposes does not diminish KYBC's ownership of all of the mineral rights under the property. Therefore, we conclude that if the household coal reservation has any value to Bailey, it would only be compensable in the condemnation proceedings against the surface estate.

Accordingly, the judgment of the Pike Circuit Court is affirmed.

ALL CONCUR.

5. *Id.* at 582, 138 S.E. at 384.

6. *Id.* at 586, 138 S.E. at 386.

7. *Kentucky West Virginia Gas Co. v. Browning,* Ky., 521 S.W.2d 516, 517 (1975).